**In re TEXACO INC., Texaco Capital Inc., Texaco Capital N.V., Debtors.**

**Bankruptcy Nos. 87 B 20142–87 B 20144.**

United States Bankruptcy Court, S.D. New York.

July 24, 1987.

See also, Bkrtcy., 77 B.R. 433.

Weil, Gotshal & Manges, Cravath, Swaine & Moore, New York City, for debtors.

Levin & Weintraub & Crames, New York City, Stutman, Treister & Glatt, P.C., Los Angeles, Cal., Baker & Botts, Houston, Tex., Paul, Weiss, Rifkind, Wharton & Garrisonn, New York City, for Pennzoil Co.

Kramer, Levin, Nessen, Kamin & Frankel, New York City, for General Committee.

Cleary, Gottlieb, Steen & Hamilton, New York City, for Industry Committee.

Strook & Strook & Lavan, New York City, for Morgan Guar. Trust.

Booth, Marcus & Pierce, New York City, for Oil, Gas & Nuclear Workers' Union.

Berger & Montague, P.C., Philadelphia, Pa., for John F. Browne, Chairman, Texaco Shareholders Group.

Bader & Bader, White Plains, N.Y., for Lindner Fund, Inc.

## DECISION ON TEXACO'S MOTION TO EXTEND AND PENNZOIL'S MOTION TO REDUCE THE § 1121 EXCLUSIVITY PERIODS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The tension between Texaco Inc. and its leading general unsecured creditor, Pennzoil Company, has heightened to the point where they have each applied for diametrically opposite relief; Texaco seeks to extend and Pennzoil seeks to reduce the 120–day and 180–day exclusive periods during which only a debtor may file a plan of reorganization and solicit acceptances in accordance with 11 U.S.C. § 1121(b) and (c)(3). Pennzoil states that the purpose for its motion is to prevent Texaco from obtaining an automatic 60–day extension of exclusivity by filing a plan of reorganization before the last day during the exclusivity period when only the debtor may file a plan. On the other hand, Texaco requests extensions of the 120–day and 180–day exclusive periods to March 31, 1988 and May 31, 1988 respectively.

Texaco's motion was returnable on July 23, 1987. Pennzoil's motion was returnable on July 24, 1987. With the consent of all parties both motions were consolidated for hearing on July 23, 1987.

### FINDINGS OF FACT

1. On April 12, 1987, Texaco Inc and its two subsidiary corporations, Texaco Capital Inc. and Texaco Capital N.V. (the "debtors"), each filed with this court a petition for reorganizational relief under Chapter 11 of the Bankruptcy Code. The debtors were continued in the operation and possession pursuant to 11 U.S.C. §§ 1107 and 1108. The debtors' Chapter 11 cases were consolidated by order of this court for joint administration in accordance with Bankruptcy Rule 1015.

2. Texaco Inc. is principally a holding company that also has oil and gas and related operations. The bulk of the oil and gas operations of the Texaco enterprise are owned and conducted by Texaco's non-Chapter 11 filing subsidiaries and affiliates. Texaco Capital Inc. and Texaco Capital N.V. are the only subsidiaries of Texaco Inc. that have filed cases under Chapter 11. Both subsidiaries are financing entities which borrow funds from third parties and loan or advance funds to Texaco Inc. or its subsidiaries. Texaco Inc. is a Delaware corporation whose stock is traded primarily on the New York Stock Exchange. It has approximately 278,000 stockholders and approximately 242,000,000 shares of common stock issued and outstanding.

3. On December 10, 1985, a judgment against Texaco Inc. (hereinafter "Texaco") was entered in favor of Pennzoil Company (hereinafter "Pennzoil") in an action in the District Court of Harris County, Texas, which incorporated the verdict of a jury trial in favor of Pennzoil in the approximate amount of $10.3 billion. This judgment included punitive damages of $3 billion. The Court of Appeals of the First Supreme Judicial District of the State of Texas affirmed the judgment on February 12, 1987, and ordered Pennzoil to file a remittitur reducing the punitive damages from $3 billion to $1 billion. The enforcement of the Pennzoil judgment was stayed

by an interim consent order in the Texas Court and then by an injunction issued in an action commenced by Texaco in the United States District Court for the Southern District of New York. The District Court's injunction was affirmed by the Court of Appeals for the Second Judicial Circuit, but was subsequently disssolved as a result of a decision rendered by the United States Supreme Court on April 16, 1987 in *Pennzoil Company v. Texaco Inc.,* ——  U.S. ——, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

4. On April 23, 1987, this court entered an order on consent modifying the automatic stay imposed under 11 U.S.C. § 362 so as to allow the continuation of Texaco's appeal of the Pennzoil judgment in the Texas courts. On April 24 and May 26, 1987, the Texas Court of Appeals denied Texaco's motions for a rehearing.

5. On June 15, 1987, Texaco filed an application for a writ of error, with the Supreme Court of Texas, the highest court of that state. Both parties anticipate that the Supreme Court of Texas will decide whether or not to grant the writ no earlier than the fall of 1987.

6. According to Texaco, the adverse impact of the multi-billion judgment upon the liquidity and financial condition of Texaco impelled Texaco and its two financial subsidiaries to seek Chapter 11 relief, especially in light of Texaco's stated inability to post a bond or other security necessary to stay enforcement of the judgment. Texaco asserts that the outcome of the appellate proceedings with respect to the Pennzoil judgment will have a material and crucial affect upon the evolution of any proposed plan of reorganization by Texaco.

7. Texaco, together with its subsidiaries, is the eighth largest corporate enterprise in the United States. Their Chapter 11 cases are the largest ever filed in this country. The debtors have over 300,000 creditors and equity security holders and they are parties to tens of thousands of executory contracts. The debtors have approximately $25.5 billion in assets and $12.5 in liabilities, exclusive of the Pennzoil judgment. Texaco does business in all of the states in this country and in over 150 countries throughout the world. This court recently approved an application whereby Texaco proposes to deal with approximately 55,000 executory contracts, mainly involving oil and gas operations and oil drilling leases. Since the commencement of these cases on April 12, 1987, this court has held twenty-six hearings of which sixteen occurred during the last seven weeks. In the course of these hearings various states, foreign entities and corporate entities appeared with respect to specific operations under contracts and ventures involving Texaco's global activities. It has taken more than three months since the commencement of these cases for the United States trustee to select and form an equity shareholders' committee, which is now in place as of last week. The time frame within which the debtors are required to file their schedules of assets and liabilities and their statements of executory contracts and affairs had previously been extended by this court to September 8, 1987.

8. Consideration must also be given to the fact that a final determination with respect to Texaco's pending appeal of the Pennzoil judgment has not yet occurred. Such a determination will have a substantial affect upon the assets available to the debtors for payment to their many creditors and the extent of any equity remaining for the 278,000 Texaco stockholders. The enormity of the Pennzoil judgment and the unresolved pending appeal of such judgment are formidable obstacles to the formulation of a plan of reorganization within 120 days from April 12, 1987, the date when these Chapter 11 cases were commenced.

9. Pennzoil complains that there have been no meaningful discussions with Texaco for purposes of resolving the Pennzoil Texaco dispute and, therefore, the 120–day exclusivity period should be shortened so as to enable Pennzoil to propose a creditor's plan of reorganization which would leave all creditors other than Pennzoil unimpaired and would pay Pennzoil 4.1 billion dollars in settlement of the multi-billion

judgment. Pennzoil contends that a compromise of Texaco's liability will be the cornerstone of any plan of reorganization that can possibly be confirmed in the near future. Moreover, Pennzoil maintains that it has been ready, willing and able to propose a substantial compromise of its claim, which promises to provide a prompt workable resolution of these Chapter 11 cases.

10. Texaco believes that until its appeal of the multi-billion dollar Pennzoil judgment is resolved it is premature to pay 4.1 billion dollars with respect to the vigorously disputed judgment. Texaco maintains that its central and controlling position with respect to the disputed judgment, apart from other appealed issues, is that the contested agreement which Pennzoil says it entered into with the Getty parties violated Rule 10b–13 of the Securities and Exchange Commission, 17 C.F.R. § 140.-10b–13; (1987). Rule 10b–13 prohibits a tender offeror from making a private arrangement to purchase shares while its tender offer for those shares is outstanding. Accordingly, Texaco argues that the Pennzoil judgment in the state court violates the Supremacy Clause of the Constitution of the United States (Article VI, Clause 2) and that under New York law, a party who contracts in violation of Rule 10b–13 acquires no enforceable rights. Hence, Texaco contends that under federal law, as expressed in the Supremacy Clause, a violator of Rule 10b–13 cannot be permitted to recover under state law the benefit of an illegal bargain. Until this substantial constitutional issue is resolved, Texaco cannot be faulted for refusing to compromise its indebtedness under the Pennzoil judgment by agreeing to pay 4.1 billion dollars in settlement of a liability it legitimately disputes on appeal.

11. By reason of the debtor's size and magnitude of the operations involved, it can be stated in no uncertain terms that this Texaco case is not a garden variety Chapter 11 case. Indeed, these consolidated cases are unusually large and complex. If a reorganization is to be achieved in accordance with the exclusivity privilege which is afforded to all debtors in Chapter 11 cases pursuant to 11 U.S.C. § 1121(b),

additional time will be required in order to allow these debtors a reasonable opportunity to pursue their appeal of the Pennzoil judgment and to negotiate with their creditors in order to formulate a plan of reorganization.

## DISCUSSION

The exclusive rights afforded Chapter 11 debtors to file a plan of reorganization within 120 days of the commencement of the case and to have the plan accepted within an additional 60 days, together with the court's discretionary authority to increase or reduce these periods, are delineated in 11 U.S.C. § 1121(b), (c)(3) and (d) as follows:

(b) Except as otherwise provided in this section, only the debtor may file a plan until 120 days after the date of the order for relief under this chapter.

(c) Any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if—

\* \* \* \* \* \*

(3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.

(d) On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120–day period or the 180 day period referred to in this section.

Section 1121 represents a departure from the procedure under the former Bankruptcy Act where only the debtor could file a plan of arrangement. The goal reflected in 11 U.S.C. § 1121, in allowing other interested parties to file a plan of reorganization after the expiration of the debtor's exclusivity period, was predicated on the theory that there should be a relative balance of negotiating strength between debtors and creditors during the reorganization pro-

cess. *Teachers Insurance and Annuity Association of America v. Lake In The Woods (In re Lake In the Woods)*, 10 B.R. 338, 343 (E.D.Mich.1981).

The controlling statutory language upon which both Texaco and Pennzoil rely for the court's intervention to increase, as Texaco requests, or to shorten, as Pennzoil asks, is 11 U.S.C. § 1121(d), which permits the court, for cause, to increase or reduce the 120–day and the 180–day exclusivity periods. Subsection (d) contains no definition or example of what constitutes cause.

> The Court is given little guidance as to when it should exercise its discretion to either reduce or increase the applicable time periods.

3 W. Norton Bankruptcy Law and Practice § 61.07.

The legislative history accompanying 11 U.S.C. § 1121 offers some guidance as to the Congressional intent.

> Cause might include an unusually large or an unusually small case, delay by the debtor or recalcitrance among creditors.

H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 406 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6362.

> Since the debtor has an exclusive privilege for 6 months during which others may not file a plan, the granted extension should be based on a showing of some promise of probable success. An extension should not be employed as a tactical device to put pressure on parties in interest to yield to a plan they consider unsatisfactory.

S.Rep. No. 95–989, 95th Cong.2d Sess. 118 (1978), U.S.Code Cong. & Admin.News 1978, p. 5904.

█ In ascertaining what constitutes cause within the meaning of 11 U.S.C. § 1121(d), the courts have established certain general principles. The party who seeks the extension or the reduction of the exclusivity periods has the burden of establishing cause. *Teachers Insurance and Annuity Association of America v. Lake In The Woods (In re Lake In the Woods)*, 10 B.R. at 345; *In re Pine Run Trust, Inc.*, 67 B.R. 432, 434 (Bankr.E.D.Pa.1986);

*In re Tony Downs Food Co.*, 34 B.R. 405, 470 (Bankr.D.Minn.1983); *In re Parker Street Florist & Garden Center, Inc.*, 31 B.R. 206, 207 (Bankr.D.Mass.1983); *In re Ravenna Industries, Inc.*, 20 B.R. 886, 891 (Bankr.N.D.Ohio 1982). In cases involving uncomplicated issues and not unusually large debtors, requests for extensions of the exclusivity periods should not be granted routinely or as a matter of course without proof as to probable success in formulating a plan of reorganization and evidence that the debtor did not seek the additional extension in order to pressure the creditors to accede to the debtor's reorganization demands. *In re Pine Run Trust, Inc.*, 67 B.R. at 434–435; *In re Parker Street Florist & Garden Center, Inc.*, 31 B.R. at 207. The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods. *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 298 (W.D.Tenn.1987); *In re Pine Run Trust*, 67 B.R. at 435 *In re United Press International, Inc.*, 60 B.R. 265, 270 (Bankr.D.C.1986); *In re American Federation of Television and Radio Artists*, 30 B.R. 772, 774 (Bankr.S.D.N.Y.1983).

An extension of the exclusivity period was granted with respect to a large and complex Chapter 11 case where the debtor needed additional time to resolve appeals, adversary proceedings and a multi-million dollar lawsuit; with the following observation:

> In many much smaller cases involving far less complications, two or three years go by before the debtor is in a position to file a plan.

*In re United Press International, Inc.*, 60 B.R. at 270. Similarly, the District Court affirmed an extension granted for cause in another relatively large case with the following facts:

> The Chapter 11 bankruptcy proceeding spawning this appeal is large and complex. There are approximately 100 creditors holding approximately 225 claims against Perkins' estate. The claims

amount to roughly $10,000,000.00; the estate is valued at approximately $13,-000,000.00 ...

*Gaines v. Perkins (In re Perkins),* 71 B.R. at 296.

It has been said in one case that the pendency of an appeal from an adverse judgment does not constitute cause for an extension of the exlusivity periods to propose a plan of reorganization and to obtain acceptances of the plans. *In re American Federation of Television And Radio Artists,* 30 B.R. at 774. However, the court specifically found that: "This is not an 'unusually large case' within the meaning of the legislative history to 11 U.S.C. Section 1121(d) ...". For the same reason an extension was not granted in *In re McLaury,* 25 B.R. 30 (Bankr.N.D.Tex.1982), involving a husband and wife debtors where the wife's Chapter 11 case was challenged by a motion for a dismissal for lack of good faith. In *Teachers Insurance And Annuity Association of America v. Lake In The Woods (In re Lake in the Woods),* 10 B.R. at 345, the District Court ruled that the existence of a dispute between the debtor and a creditor over title to real estate did not constitute cause to extend any further the exclusivity periods, which had previously been extended seven times from four months to one and one-half years. The debtor was not unusually large in size or scope and continued to operate the real estate complex and maintained a "take it or leave it attitude", refusing to file a plan unless the creditors conceded the title issues. The court noted that the legislative history with respect to 11 U.S.C. § 1121(d) reflects that extensions are impermissible if they are for the purpose of allowing the debtor to prolong reorganization while pressuring a creditor to accede to its point of view on an issue in dispute.

If, as reflected in the legislative history accompanying 11 U.S.C. § 1121(d), cause for extending the exclusivity period might include an unusually large case, it should follow that cause for granting the debtors' first extension request in these cases should clearly exist, especially in light of the fact that in the history of this country there has never been a Chapter 11 case as large as the Texaco cases. By sheer size alone the Texaco debtors have established cause for extending the exclusivity periods. Moreover, there is no credible evidence that the extension request was intended as a tactical device to put pressure on Pennzoil to yield its rights under the multi-billion dollar judgment which is the subject of the pending appeal in the Supreme Court of Texas.

In those cases where the exclusivity periods were reduced, factors such as gross mismanagement of the debtor's operations, *In re Crescent Beach Inn, Inc.,* 22 B.R. 155 (Bankr.D.Me.1982) or acrimonious feuding between the debtor's principals *Texas Extrusion Corp. v. Palmer, Palmer & Coffee (In re Texas Extrusion Corp.),* 68 B.R. 712, 725 (N.D.Tex.1986) were major obstacles to a successful reorganization. These factors do not exist in the Texaco cases.

■ A 120–day extension of the debtors' exclusive right to propose a plan of reorganization is warranted in these cases in order to allow the General Committee and the Industry Committee an opportunity to review and negotiate an acceptable plan. Indeed, the shareholders' committee should also be afforded an opportunity to participate in the formulation of a plan. However, it was brought out at the hearing that the shareholders will hold their first meeting on July 29, 1987, at which time they will select their counsel and other professionals to assist them in this process. An extension of 120 days to formulate a plan will also allow the debtors additional time to resolve the many administration matters that understandably confronted them at the outset of these cases. Moreover, substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan. An additional extension of the 120–day and 180–day exclusivity periods should satisfy some of these needs as well as afford sufficient time for a de-

termination of the debtors' writ of error filed in the Texas Supreme Court.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. The debtors have established cause within the meaning of 11 U.S.C. § 1121(d) for extending the 120–day and 180–day exclusive periods during which only the debtors may file a plan of reorganization and solicit acceptances in accordance with 11 U.S.C. § 1121(b) and (c)(3).

3. Pennzoil has not established cause for shortening the 120–day and 180 day exclusive periods pursuant to 11 U.S.C. § 1121(d).

4. The debtors' motion to extend the 120–day and 180–day exclusive periods is granted to the extent that the original exclusive periods shall be extended for another 120 days and 180 days, respectively.

5. Pennzoil's motion to shorten the 120–day and 180–day exclusive periods is denied.

SUBMIT ORDER on notice.