**In re GROSSINGER'S ASSOCIATES, a New York Limited Partnership, Debtor.**

**Bankruptcy No. 89B 20943.**

United States Bankruptcy Court, S.D. New York.

July 2, 1990.

Angel & Frankel, P.C., New York City, for Grossinger Development Corp; John H. Drucker, of counsel.

Ballon, Stoll & Itzler, New York City, for debtor; Ronald Itzler, of counsel.

Schulte, Roth & Zabel, New York City, for Lloyds and Hokkaido; Geoffrey Amsel, of counsel.

Rattet & Liebman, P.C., New York City, for mechanics lienors; Robert Rattet, of counsel.

### DECISION ON MOTION FOR AN ORDER TERMINATING DEBTOR'S EXCLUSIVE PERIODS

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

Various creditors, including Grossinger Development Corporation ("GDC"), Lloyds Bank PLC ("Lloyds") and Hokkaido Takushoku Bank, Ltd. ("Hokkaido") have moved for an order terminating the debtor's exclusive periods to file a plan of reorganization and solicit acceptances thereto pursuant to 11 U.S.C. § 1121(b), and (c)(3).

The debtor, Grossinger's Associates, filed with this court its petition for reorganizational relief under Chapter 11 of the Bankruptcy Code on December 19, 1989 and was continued in possession under 11 U.S.C. §§ 1107 and 1108 as a debtor in possession.

On May 8, 1990, this court issued an order pursuant to 11 U.S.C. § 1121(d) authorizing an extension of the debtor's exclusive 120–day and 60–day periods for filing and obtaining acceptances for a Chapter 11 plan to June 25, 1990 and August 23, 1990, respectively. The order was conditioned on the continued payment of the ongoing administrative expenses by an affiliated third party entity known as Servico, Inc. ("Servico"). The debtor and Servico were required to submit affidavits on a bi-weekly basis to reflect the payment of the continuing administrative expenses. In the event that the funding of continued administrative expenses was not complied with, the parties in interest could move to terminate the exclusivity periods.

On June 6, 1990, the debtor filed its proposed plan of reorganization, which provides that unsecured claims will be paid 10% of their amounts, whereas the debtor's limited and general partners will continue to maintain their equity interests. Unless at least two-thirds in amount and more than one-half in number of the classes of claims vote to accept the plan in accordance with 11 U.S.C. § 1126(c), this plan will not pass muster under 11 U.S.C. § 1129(b) because it does not satisfy the fair and equitable test under 11 U.S.C. § 1129(b)(2)(A) and (B) in that creditors must be paid in full before equity holders may receive or retain their interests. *Protective Committee v. Anderson,* 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968); *SEC v. Ameri-*

can Trailer Rentals Co., 379 U.S. 594, 85 S.Ct. 513, 13 L.Ed.2d 510 (1965); Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939); In re D & F Construction Co., 865 F.2d 673 (5th Cir.1989); In re Drimmel, 108 B.R. 284, 287 (Bankr.D.Kan.1989). In any event, the debtor's filing of a pro forma plan does not have any significance with respect to the procurement of the requisite acceptances within the 180–day period under 11 U.S.C. § 1121(c)(3) because no acceptances may be solicited without the approval of a disclosure statement in accordance with 11 U.S.C. § 1125. The debtor has not filed a disclosure statement, which requires not less than 25 days' notice by mail before it may be considered for approval in accordance with Bankruptcy Rule 2002(b).

Manifestly, the debtor does not realistically expect to satisfy its creditors with a plan that proposes to pay unsecured creditors 10%, while the debtor's partners retain their equity interests. Obviously, the proposed plan was filed to meet the 120–day deadline for filing purposes so that the debtor could then look to the 180–day period for obtaining acceptances in accordance with 11 U.S.C. § 1121(c)(3). In essence, the debtor is simply bidding for more time because it does not have any funding in place to support a plan at this time. More importantly, the debtor has not satisfied the requirements of this court's order dated May 8, 1990 in that it has failed to make provision for accruing real estate taxes. It is no excuse to say that the taxing authorities will not accept partial payments; the debtor need only set up an escrow bank account where the payments can be deposited so as to ensure that the mounting administrative expenses will not adversely affect this estate and its creditors.

The debtor contends that Servico is in the process of refinancing its affairs and that when this project is completed, Servico will be in a position to generate capital to fund a plan to satisfy the debtor's bank creditors. This visionary concept contemplates the refinancing of two entities; firstly, Servico and secondly, the debtor. Usually it is difficult enough to refinance a debtor's cap-ital structure. Here the debtor's financial prospects hinge on salvaging Servico as well. After more than six months of delay and no progress, the creditors in this case should not be required to await the outcome of an attempted restructuring of a nondebtor entity before the debtor may expect to make efforts to fund a plan of reorganization.

In Chapter 11 cases involving debtors with uncomplicated financial structures and relatively few or no public shareholders, requests for extensions of the exclusivity periods should not be granted routinely or as a matter of course without proof as to probable success in formulating a plan of reorganization and evidence that the debtor did not seek the additional extension in order to pressure the creditors to accede to the debtor's reorganization demands. In re Texaco Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y.1987); In re Pine Run Trust, Inc., 67 B.R. 432, 434–435 (Bankr. E.D.Pa. 1986).

Accordingly, in view of the fact that the plan which the debtor did file does not offer any serious reorganizational possibilities, and in light of the fact that the debtor has not satisfied the funding of accruing administrative expenses as a condition for continued plan exclusivity, it follows that the creditors should be afforded the opportunity to propose a Chapter 11 plan. If the debtor seriously expects to proceed with its Chapter 11 reorganization, it may do so because loss of plan exclusivity does not mean that the debtor is foreclosed from promulgating a meaningful plan of reorganization; only that the right to propose a Chapter 11 plan will not be exclusive with the debtor.

The goal reflected in 11 U.S.C. § 1121 in allowing other interested parties to file a plan of reorganization after the expiration of the debtor's exclusivity periods, is predicated on the theory that there should be a relative balance of negotiating strength between debtors and creditors during the reorganization process. Teachers Insurance and Annuity Association of America v.

*Lake in the Woods* (*In re Lake in the Woods*), 10 B.R. 338, 343 (E.D.Mich.1981).

Therefore, the application of GDC to terminate the debtor's exclusive periods to file a plan of reorganization and solicit acceptances thereto pursuant to 11 U.S.C. § 1121(b) and (c)(3) is granted.

SETTLE ORDER on notice.