**In re Frederick L. SNYDER a/k/a Fred L. Snyder a/k/a Fred Snyder, Debtor.**

**Bankruptcy No. 84–04294T.**

United States Bankruptcy Court, E.D. Pennsylvania.

June 10, 1987.

Jeffrey Meyers, Philadelphia, Pa., for debtor, Frederick L. Snyder.

Richard C. Snelbaker, Snelbaker, Elicker & Silver, Mechanicsburg, Pa., for purchaser, Robert Snyder.

Renee L. Ferretti, Klehr, Harrison, Harvey, Branzburg, Ellers & Weir, Allentown, Pa., for Meridian Bank, Objector.

Mark J. Packel, Adelman Lavine Krasny Gold & Lavin, Philadelphia, Pa., for trustee, Marvin Krasny.

Marvin Krasny, Adelman Lavine Krasny Gold & Lavin, Philadelphia, Pa., trustee.

## OPINION

BRUCE FOX, Bankruptcy Judge:

The trustee has filed a motion in this chapter 11 case to obtain court approval of his proposed sale of an asset of the debtor's estate to Robert Snyder for $73,000.00. The trustee entered into an agreement of sale, conditioned upon the court's approval, to sell the debtor's one-half interest in a partnership known as Wheatland Associates. The buyer, Robert Snyder, is the debtor's brother and the holder of the other one-half interest in this partnership. For the reasons set forth below, the trustee's motion will be denied.

### I.

The debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code on December 11, 1984. The debtor's estate holds, inter alia, an undivided one-half interest in the partnership known as Wheatland Associates. The partnership owns, as its principal asset, a tract of land comprised of 32 building lots, some improved, known as Wheatland subdivision. From July 14, 1974, until December 11, 1984, the partnership was actively engaged in the business of developing and selling properties in the Wheatland subdivision. All activities of the partnership ceased with the debtor's filing of bankruptcy.

A trustee was appointed by order of this court on January 28, 1985. Pursuant to a confirmed plan of orderly liquidation, the trustee has proceeded to sell the assets comprising the debtor's estate. The asset which the trustee is now attempting to sell is the debtor's interest in the Wheatland Associates partnership.

On April 21, 1986, the trustee entered into an agreement of sale (expressly subject to the bankruptcy court's approval) for the debtor's interest in the partnership. The prospective buyer is Robert Snyder, the holder of the other one-half interest in the partnership. Robert Snyder ("purchaser") seeks to exercise his rights, under paragraph fourteen of the partnership agreement, which provides that in the event of the dissolution or termination of the partnership and one of the partners desires to continue the business of the partnership he may do so upon paying the non-continuing partner his share of the net partnership assets. Robert Snyder and the trustee entered into negotiations and agreed upon a sale price of $73,000.00.[1] On April 29, 1986, the trustee filed a motion seeking approval of the private sale of the debtor's interest in Wheatland Associates. An objection was filed by Meridian Bank alleging that the purchase price was insufficient and requesting that the sale not be approved.

Hearing on this objection was rescheduled several times at the parties request but was ultimately held on November 20, 1986. At this hearing, the trustee's counsel stated that the trustee no longer believed the sale to Robert Snyder for $73,-000.00 to be in the best interest of the estate or its creditors. He declined the opportunity to either support or withdraw his motion.[2]

The purchaser, going forward to support the trustee's motion, called two expert witnesses. The testimony of Mr. William Daylor, a real estate appraiser, was heard in regard to the procedure used in placing a value on the partnership real estate. Mr. Richard Bauer, C.P.A., also testified as to the methods and calculations employed in placing a value on the one-half partnership interest to be sold. Messrs. Roman, Shipe and Scholl testified on behalf of the Bank. Each of these witnesses gave evidence as to the price he would pay for the real estate, which is the principal asset of the partnership, provided that such land was conveyed free of contingencies. Their offers were for $374,000.00, $384,000.00 and $350,000.00 respectively. The purchaser argues that this testimony is not responsive to and has no bearing on the issue before the court, that being the sale of the debtor's partnership interest. The trustee and the Bank argue that these three offers go to prove that the purchaser's valuation of the land, upon which the value of the partnership interest is based, is grossly inadequate, resulting in an underestimation of the partnership interest for sale.

## II.

Before turning to the merits of this dispute, a procedural matter must be resolved. After the trustee filed its motion, notice of the proposed sale and its salient terms was provided to all creditors and parties in interest as is required by Bankr.Rules 2002(a)(2), (c)(1), and 6004(b). Meridian Bank, (formerly First National Bank of Allentown), filed an objection to the proposed sale.[3] The prospective purchaser, Robert Snyder, argued at the hearing (and continues to assert) that Meridian's objection was untimely and so Meridian has no standing to oppose the trustee's motion. I permitted

---

1. Calculations and explanation of how this price was determined are included *infra* at Appendices I–II.

2. Since the agreement of sale was conditioned only upon court approval, in all likelihood the trustee feared that by withdrawing his motion he might be sued by the prospective purchaser. As a result, the purchaser acted at the hearing as the motion's proponent. The trustee's fears

may not have been warranted. *See* notice of sale ¶ 1(g).

3. The Bank of Pennsylvania, First National Bank of Leesport, Hamilton Bank and First Valley Bank joined in Meridian Bank's objection at the November 20, 1986 hearing. None of the above, save Meridian Bank, have filed formal objections with the Court.

Meridian to participate at the hearing and overruled the purchaser's contention.

The right of a trustee to sell property of the estate other than in the ordinary course of business stems from 11 U.S.C. § 363(b)(1). This statutory provision marks a departure from the sale procedure which previously existed under section 70(f) of the former Bankruptcy Act. Under the Code, 11 U.S.C. § 363(b)(1), court approval of the sale is no longer required so long as notice, in accordance with the relevant procedural rules, is provided and no objection is filed to the proposed sale. 11 U.S.C. § 102(1); *accord Matter of Upright*, 1 B.R. 694, 697, (Bankr.N.D.N.Y.1979). If an objection is filed, a hearing is held on the objection; if no objection is filed, the trustee is free to proceed without initial court scrutiny.

In the matter *sub judice*, the parties agree that notice of the proposed sale was mailed by the bankruptcy clerk's office to all creditors on May 20, 1986. On June 13, 1986, Meridian mailed its objection which was received by the clerk and docketed on June 16, 1986.

In relevant part, the notice which was sent stated the following:

> ▉ ... (f) Closing shall take place ... not later than thirty (30) days after the entry of an Order of the Bankruptcy Court approving the sale of the debtor's interest in the Partnership;
> ....
> 3. The Debtor, any creditor or party in interest may file an objection or other responsive pleading with the Clerk, United States Bankruptcy Court ... and serve a copy on the Trustee's counsel ... on or before twenty (20) days from the date of this Notice....
> 5. In the absence of any objection, responsive pleading or request for a hearing, counsel shall certify to the Court the absence of such filing and the Court may, upon consideration of the record, grant the Motion.

Bankr.Rule 6004(b) sets out the time period within which an objection may be filed to a proposed sale:

> Except as provided in subdivision (c) of this rule, an objection to a proposed use, sale, or lease of property shall be filed and served not less than five days before the date set for the proposed action or within the time fixed by the court.[4]

Rather than fixing a particular date for completing the sale of the partnership interest, the parties here decided to set the closing date after court approval was obtained. Thus, Meridian's instant objection was filed more than five days before sale, as court approval has not yet been given. However, the purchaser implicitly argues that this court, by approving the notice, shortened the objection period to twenty days from the date of notice. *See* Notice ¶ 3. Meridian responds by stating (and the purchaser does not dispute) that the notice it received was undated, and thus it did not know when the twenty day period began.

▉ Rather than decide whether the time period established by Rule 6004(b) has been shortened in this instance, I will accept the purchaser's position *arguendo;* yet I conclude that Meridian had standing to participate at the hearing. Bankr.Rule 9006(b)(1) grants me the authority to enlarge certain limitation periods, such as the one set forth in Rule 6004(b), even after its expiration upon a showing of "excusable neglect." Although not statutorily defined, most courts have interpreted "excusable neglect" to mean:

> ... The failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform.

*In re Manning*, 4 B.C.D. 304, 305 (Bankr. D.Conn.1978); *accord, e.g., In re O.P.M. Leasing Services, Inc.*, 48 B.R. 824, 830 (S.D.N.Y.1985); *In re Stern*, 70 B.R. 472, 475 (Bankr.E.D.Pa.1987); *In re Figueroa*, 33 B.R. 298, 301 (Bankr.S.D.N.Y.1983); *In re Klayer*, 13 B.R. 542 (Bankr.W.D.Ky. 1981). Among the factors to be considered

---

**4.** Subdivision c refers to the sale of property with value less then $2,500.00 and is not rele- vant to this matter.

in determining whether conduct meets this standard are the adequacy of the notice provided, the reason for the delay, and the prejudice, if any, caused by the delay. *In re O.P.M. Leasing Service, Inc.; In re Figueroa.*

■ Here, applying the provisions of Bankr.Rule 9006(e) and (f), Meridian's objection was but a few days late and the lateness was caused, according to Meridian, by a defect in the notice—that is, the notice's failure to be dated—which was not caused by Meridian. Moreover, the hearing on the trustee's motion did not take place until five months after the objection was filed. There was no showing of any harm or prejudice to the purchaser by the delay of a few days. *Compare In re Northern Star Industries, Inc.,* 38 B.R. 1019 (Bankr.E.D.N.Y.1984) (after no objections were filed, the purchaser made improvements to the property exceeding $15,-000.00).[5] Therefore, I conclude that Meridian has demonstrated excusable neglect for its late filing. *See In re Trail's End Lodge, Inc.,* 54 B.R. 898, 902 (Bankr.D.Vt. 1985) (rejection of plan and objection to confirmation filed three days late would be considered as there was no prejudice to the debtor); *In re Klayer,* 13 B.R. at 542 (excusable neglect shown when notice was defective, objector's filing was two days late, and the debtor was not prejudiced). *Cf. In re Table Talk, Inc.,* 53 B.R. 937, 941–942 (Bankr.D.Mass.1985) (excusable neglect would be shown if late filing objector gave notice of objection before hearing and attended hearing).[6]

## III.

The purchaser assumes that if I were to conclude that Meridian's objection was untimely, (and if I were also to hold that Meridian failed to demonstrate excusable neglect), that this court must approve the trustee's motion at issue here. Such an assumption may not be accurate in this circuit in light of the Court of Appeals' decision in *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir.1986) (*"Abbotts"*).

Under the former Bankruptcy Act, which required all trustee sales to be approved by a bankruptcy judge, the court had discretion to disapprove a sale even though no timely objections were filed. *See In re Muscongus Bay Co.,* 597 F.2d 11 (1st Cir. 1979) (court need not approve sale to the sole timely bidder if it had reason to believe that a "substantially better price" would be obtained otherwise.) Under the current Bankruptcy Code, a court, upon timely objection, also has the authority to reject a sale to the sole timely bidder if it believes that the sale price or procedure is questionable. *See In re Lambert* 54 B.R. 371 (Bankr.D.N.H.1985); *Matter of Cossett,* 51 B.R. 166 (Bankr.S.D.Ohio 1985). This discretion stems from the principle underlying confirmation of a sale: the securing of the highest price for the bankruptcy estate. *Matter of Chung King, Inc.,* 753 F.2d 547, 549 (7th Cir.1985).

In addition to the discretion traditionally exercised by bankruptcy courts, the Third Circuit Court of Appeals requires all bankruptcy courts in this circuit to make a finding under 11 U.S.C. § 363(m) before approving any trustee sales. "[W]e hold that when a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser." *Abbotts,* 788 F.2d at 149–150. The Court of Appeals defined "good faith" under § 363(m) as "encompass[ing] one who purchases in 'good faith' and for 'value'". *Id.* at 147.

---

**5.** Prejudice to the buyer does not mean that the buyer may not receive court approval because the objection is sustained. *See Matter of Williamson,* 804 F.2d 1355, 1358 (5th Cir.1986).

**6.** Meridian argues in its brief that it had requested and obtained an extension to object from the trustee. No evidence of the fact was presented at the hearing and so I will not consider it.

Moreover, I note that parties are not free to extend bankruptcy limitation periods without court approval. *In re Sonoma V,* 703 F.2d 429 (9th Cir.1983). *See Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 130 F.2d 185 (3d Cir.1942). I need not decide whether reliance upon such an extension, if proven, constitutes excusable neglect.

Normally, when there is no objection, a trustee need not obtain a court order to sell property under § 363(b)(1). *See* 2 *Collier on Bankruptcy* ¶ 363.03 (15th ed. 1987). Thus, one could fairly interpret the *Abbotts* requirement as relevant only when a timely objection is made; indeed, the primary purpose of the § 363(m) finding is to inform parties of the need, if any, for a stay of the sale pending appeal. *Abbotts*, 788 F.2d at 150. However, in the matter at bench, the trustee and buyer seemed to desire court sanction even if no objection were filed, for they have conditioned sale upon obtaining court approval and will schedule closing only after obtaining a court order. In so doing, the parties may have inadvertently triggered the *Abbotts* requirement, which literally applies to all court approved sales, even if no timely objection is filed. Having noted this issue, I need not decide it,[7] for I have the authority to treat Meridian's objection as a request to set aside a sale.

## IV.

Under both the former Bankruptcy Act and the current Bankruptcy Code there is a distinction between setting aside a sale and approving or confirming a sale. *See Matter of Chung King, Inc.; In re General Insecticide Co.*, 403 F.2d 629, 630–631 (2d Cir.1968); 4B *Collier on Bankruptcy* ¶ 70.98[17] (14th ed. 1978). A bankruptcy court has significantly greater discretion to deny approval of a sale than to set aside the sale. *Matter of Chung King, Inc.* Among the traditional grounds for setting aside a sale is a determination that the approved sales price was "grossly inade-

quate".[8] *Id.* at 550–51, Obviously, setting aside a sale for a grossly inadequate price is more difficult than objecting to a sale due to inadequacy of price or because a significantly better price is available.

In sum, I hold that Meridian demonstrated excusable neglect and so its objection was filed timely. Accordingly, I may sustain the objection if a substantially better price may be obtained. Alternatively, if its objection were not timely filed, its opposition to the sale, because the price is "excessively low," *see* Exhibit O–1, can be treated as requesting that any sale be set aside for a grossly inadequate price. And, under either standard, I must conclude from the evidence before me that the motion to approve the sale should be denied.

The purchaser offered two witnesses to justify the proposed purchase price.[9] First, Mr. Daylor, a real estate appraiser testified that the fair market value of the 32 lots comprising the Wheatland subdivision had a market value of $204,000.00. Mr. Bauer then testified that the debtor's interest in the partnership had a value of $73,000.00, largely because any purchaser is obtaining only a partial interest in both the partnership and the land. I have summarized both witnesses computations in appendices attached to this opinion, and note here that while I do not agree entirely with Mr. Bauer's methodology (e.g., there is no reason to discount any cash on hand), it is Mr. Daylor's property valuation that is critical, for it underlies Mr. Bauer's determination of purchase price. And, Mr. Daylor's appraisal appears to be flawed.

In determining the market value of the subdivision, Mr. Daylor expressly conclud-

---

7. I do observe, however, that even if the *Abbotts* requirement is not applicable to all court approved sales, the circumstance of a particular case may lead the court to require evidence of the good faith of the purchaser. Thus, the cautious bankruptcy practitioner will always, at a minimum, be prepared to submit such evidence. In the absence of an objection to the sale, the court may, in its discretion, accept the evidence in affidavit or documentary form.

8. Of course, a sale may be set aside for reasons other than sale price, *see Matter of Chung King, Inc.*, but such other grounds have not been alleged or shown in this case.

9. The trustee recognizes that a sale of a one-half partnership interest is more difficult to achieve than selling the underlying land of the entire partnership. He contends that he is uncertain whether 11 U.S.C. § 363(f), or (h) would allow him to sell anything more than the debtor's interest in the partnership and invites the court to assist him in resolving his dilemma. I decline to do so; the only matter before me is the trustee's motion and Meridian's objection. The primary issue in deciding this motion lies in determining the value of the debtor's interest in the partnership.

ed that the property would have to be sold in lots, over a period of years, thus lessening its value substantially, to $204,000.00. However, three witnesses testified that they would be willing to pay an average of $368,500.00 for the entire property as is, without any financing contingencies, within approximately 30 days. Were I to utilize this property valuation in the Bauer formula, the end result is a value of $130,869.09 for the debtor's partnership interest, which is an increase of $58,000.00 over the offered price.[10]

■ "Fair value" is given for property in a bankruptcy sale when at least 75% of the appraised price is paid. *Abbotts,* 788 F.2d at 149; *Willemain v. Kivitz* 764 F.2d 1019 (4th Cir.1985); *In re The Seychelles, Partnership and Genius Corp. v. Banyan Corp.,* 32 B.R. 708 (N.D.Tex.1983). Here, I must credit the testimony of three disinterested real estate developers over the opinion of Mr. Daylor and conclude that the true appraisal value for the debtor's asset, using the Bauer approach, is 44% higher than that price offered by Mr. Snyder; or that the purchaser is offering to buy the asset at only 56% of its value. Apparently, the trustee agrees, for even he believes his motion is unsupportable. Thus, I must decline to approve the proposed sale as it does not offer the estate "fair value" for its asset.

■ Alternatively, I find that the trustee's proposed private sale of property at 56% of value would be grossly inadequate in the circumstances of this case. *Cf. In re Jones,* 20 B.R. 988 (Bankr.E.D.Pa.1982) (state sheriff's sale for one-third to one-half of market value avoided pursuant to 11 U.S.C. § 548). Therefore, if the objection is treated as a request to set aside a sale, it should be sustained.

For these reasons, the trustee's motion must be denied. An appropriate order will be entered.

## APPENDIX I

Valuation of Partnership Real Estate Per Mr. William Daylor

| | |
|---|---|
| Discounted Value of improved lots | $195,000.00 |

10. *See* Appendix III.

| | |
|---|---|
| Value of 10 Unimproved Lots at $1,000 Each | $ 10,000.00 |
| Gross Partnership Asset Value | $205,000.00 |
| Discounted by 15–30% Due to Unmarketability of Partial Interest | $143,500 – $174,250 |

## APPENDIX II

Valuation of Debtor's Partnership Interest Per Mr. Richard Bauer, C.P.A.

| | | |
|---|---|---|
| Value of Property | | $204,000.00 |
| Cash on hand | + | 21,066.33 |
| Total Partnership Assets | | $225,066.33 |
| *Note Payable to Dorothy Snyder | – | 16,489.00 |
| Adjusted Gross Partnership Interest | | $208,577.33 |
| One-half Adjusted Gross Partnership Interest | | $104,288.67 |
| Discount of 25% | – | 26,072.17 |
| | | $ 78,216.50 |
| Ten Percent Down Payment | – | 7,821.60 |
| | | $ 70,394.90 |
| Discount for Lump Sum Payment | | 4,960.56 |
| | | $ 65,434.34 |
| Ten Percent Down Payment | + | 7,821.60 |
| **Value of Debtor's Partnership Interest | | $ 73,255.84 |

\* This obligation may have terminated upon the death of Dorothy Synder.

\*\* This figure was rounded off to get the Purchaser's offering price.

## APPENDIX III

Valuation of Debtor's Partnership Interest Using Average Price Offered for Partnership Property by the Contractors

| | | |
|---|---|---|
| Value of Property | | $368,000.00 |
| Cash on hand | + | 21,066.33 |
| Total Partnership Assets | | $389,066.33 |

| | | |
|---|---|---|
| Note Payable to Dorothy Snyder | – | 16,489.00 |
| Adjusted Gross Partnership Interest | | $372,577.33 |
| One-half Adjusted Gross Partnership Interest | | $186,288.67 |
| Discount of 25% | – | 46,572.17 |
| | | $139,716.50 |
| Ten Percent Down Payment | – | 13,971.65 |
| | | $125,744.85 |
| Discount for Lump Sum Payment | – | 8,847.41 |
| | | $116,897.44 |
| Ten Percent Down Payment | + | 13,971.65 |
| Value of Debtor's Partnership Interest | | $130,869.09 |