In re ALPHA INDUSTRIES, INC., Debtor.

Bankruptcy No. 86–20673.

United States Bankruptcy Court, D. Montana.

April 7, 1988.

John H. Grant, Helena, Mont., for debtor.

Ward E. Taleff, Great Falls, Mont., for Bank of Montana.

Jack L. Lewis, Greg A. Luinstra, Great Falls, Mont., for Safeco.

ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 11 case, two motions of the Trustee for confirmation of the sale of assets of the Debtor were heard, after notice to all parties in interest, on March 31, 1988. During the course of this Chapter 11 case, the Debtor was removed from possession and a Trustee appointed. Thereafter, a secured creditor, Bank of Montana, filed a Disclosure Statement and Plan of Reorganization, which Plan was confirmed by the Court on November 30, 1987. The Plan is a liquidating plan, and provides in part—

"Upon confirmation of the Plan the Trustee shall immediately take all reasonable efforts to sell the Debtor's assets within ninety (90) days. Such effort may include but not be limited to entering into a listing agreement, advertising in newspapers and trade journals and consideration of pending offers."

The first motion to approve sale of assets recites that sealed bids were received, after newspaper advertising, and opened on January 22, 1988. None of the bids were acceptable to the Trustee as being too low in amount and were rejected. Thereafter, the Trustee negotiated two separate sales, by grouping of certain assets. In one group, the Trustee included the land and buildings, office equipment and furniture, labels and bottling rights, including copyrights, for distilled spirits. This grouping resulted in a negotiated sale of $166,100.00 from Cougar Gulch Distilling, Inc. of Idaho, payable in cash within 10 days of Court approval. The sale is subject to contract provisions between the Debtor and Signet Corporation, which has a bottling contract with the Debtor and also owes the Debtor in excess of $50,000.00. The Trustee retains the right to collect that sum from Signet, and all other contract rights are assigned to Cougar Gulch after payment of the bid price. The second sale involves a collection of ceramic bottles for which the Trustee negotiated a sale, after the sealed bids were rejected, with William Ukrainetz of Seeley Lake, Montana. This bid proposes the buyer pay $1,000.00 per month for ten months to the Trustee, then take the next $10,000.00 and thereafter split all bottle sales between the parties. No other bids were received on the ceramic inventory. Both the sales were negotiated by the Trustee within 90 days of the date of confirmation and motions to confirm each sale were filed on March 8 and March 10, 1988.

On March 8 and 14, 1988, the clerk noticed confirmation of each sale for hearing. No objections to the sale of the ceramic inventory have been filed. As to sale of the main assets to Cougar Gulch, four objections to sale have been filed, one by the Debtor, two by two wage earners and insiders and one by a third party, James A. Robertson & Company, all filed within five days of the hearing date. The Robertson objection states it would buy the assets in group one for $202,000.00. At the hearing, the testimony developed that Robertson was not aware of the sale of the assets, even though it has a resident agent in Montana, and first became aware of the sale about March 10, 1988, when it was contacted by the Debtor's president who then had knowledge of the terms of the negotiated sale with Cougar Gulch. At least by March 15, 1988, Robertson had learned of the negotiated sale with Cougar Gulch, and the amount of its bid. Cougar claims the objections to the sale by the Debtor, the two insiders and Robertson are untimely and the bid of Robertson is unfair to Cougar Gulch, who participated in the sealed bid process as required by the Trustee's advertising. There is merit in that contention. Testimony further developed that the Debtor has been attempting to sell its assets since October, 1986, and Robertson was one of the firms contacted as a potential buyer, but did nothing to consummate a purchase of the business. None of the Debtor's efforts to sell met with any success, even though the parties all con-

cede that knowledge among competitors of each other's business activities in this type of liquor business is common. It is further clear from the evidence that the market for such assets, particularly the copyright to bottle labels, is small, which thus accounts in part for the lack of interest in the purchase of the assets since 1986. The bid price of Cougar Gulch will be sufficient to pay the first lienholder's claim of $159,-768.00 and then pay the second secured lienholder, Safeco Insurance, a small part of its claim. Safeco, before the actions of Robertson, filed a consent to the sale, but then at the date of hearing stated it would like to receive as much as possible from the sale of the group one assets, although it has not rescinded its written approval to the Trustee's motion.

Bankruptcy Rule 6004(b) provides:

"Except as provided in Subdivision (c) of this Rule, an objection to a proposed use, sale or lease of property shall be filed and served not less than five days before the date set for the proposed action or within the time fixed by the court."

Subdivision (c) refers to the sale of property with a value less than $2,500.00 and is not relevant to the issue on late filing. Each objection to the sale was not timely filed and must be rejected under Rule 6004. No excuse for failure to timely file objections has been offered by any of the parties.

Further, the bid of Robertson was not made within 90 days of the date of confirmation, and is therefore untimely. Moreover, the circumstances under which the bid is now made is unfair to the prospective purchaser and an inference of collusion between Robertson and the Debtor's president can be made from the record. I will, nevertheless, consider the sale of the group one assets to Cougar Gulch for $166,-100.00. Under Section 363(b)(1) of the 1978 Bankruptcy Code, a court, upon timely objection, has the authority to reject a sale to the sole timely bidder if it believes that the sale price or procedure is questionable. *In re Lambert,* 54 B.R. 371 (Bankr.N.H.1985). This discretion stems from the principles underlying confirmation of a sale, which is

to receive the highest price for the bankruptcy estate. *Matter of Chung King, Inc.,* 753 F.2d 547 (7th Cir.1985). It has also been held in other circuits that when a Bankruptcy Court authorizes a sale of assets under Section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchase under Section 363(m) of the Code. *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3rd Cir. 1986). *Abbotts* holds, in discussing § 363(m):

"The Code provides that '[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate'. 11 U.S.C. § 363(b)(1). It also provides that

[t]he reversal or modification on appeal of an authorization under subsection (b) ... of a sale or lease of property does *not* affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property *in good faith,* whether or not such entity knew of the pendency of the appeal, *unless such ... sale or lease were stayed pending appeal.*

*Id.* § 363(m) (emphasis added). The latter provision reflects the salutary ' "policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely." ' *Hoese Corp. v. Vetter Corp. (In re Vetter Corp.),* 724 F.2d 52, 55 (7th Cir.1983) [quoting 14 *Collier on Bankruptcy* 11–62.03 at 11–62–11 (14th ed. 1976) ].

\*   \*   \*   \*   \*   \*

Unfortunately, neither the Bankruptcy Code nor the Bankruptcy Rules attempts to define 'good faith'. Courts applying section 363(m) (and its predecessor, Fed. R.Bankr.P. 805) have, therefore, turned to traditional equitable principles, holding that the phrase encompasses one who purchases in 'good faith' and for 'value'. *See, e.g., In re Bel Air Assocs.,* 706 F.2d 301, 305 (10th Cir.1983); *In re Rock Indus. Mach. Corp.,* 572 F.2d 1195, 1197 (7th Cir.1978).

'The requirement that a purchaser act in good faith ... speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.' *In re Rock Indus. Mach. Corp.*, 572 F.2d at 1198; *see also Taylor v. Lake (In re Cada Invs.)*, 664 F.2d 1158, 1162 (9th Cir.1981) ('Courts have generally appeared willing to set aside confirmed sales that were "tinged with fraud, error or similar defects which would in equity effect the validity of any private transaction" ').

\* \* \* \* \* \*

Traditionally, courts have held that '[f]air and valuable consideration is given in a bankruptcy sale when the purchaser pays 75% of the appraised value of the assets.' *In re Rock Indus. Mach. Corp.*, 572 F.2d at 1197 n. 1.

\* \* \* \* \* \*

Generally speaking, an auction may be sufficient to establish that one has paid 'value' for the assets of a bankrupt.

\* \* \* \* \* \*

In short, we hold that when a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser." *Id.* at 147–150.

It is also well established that the Trustee has the exclusive right, power and authority to sell assets upon liquidation in Chapter 7 cases, as opposed to the Debtor, *In re Robison*, 74 B.R. 646 (Bankr.E.D.Mo. 1987), and normally, where there is no objection to the sale, the Trustee need not obtain a Court order to sell the property. *In re Snyder*, 74 B.R. 872 (Bankr.E.D.Pa. 1987), (one could fairly interpret *Abbotts'* requirement on good faith as relevant only when timely objection is made). In the case *sub judice*, the Plan, confirmed by the Court after notice to all creditors, required

a sale of the assets in 90 days. One factor which dictated such result was the continuing expense being incurred by the debtor for salaries. That expense is still on-going. In addition, all sales of assets were subject to Court confirmation, and thus the good faith requirement was implicitly made part of the Plan.

The objections raised at the hearing do not challenge the conduct of the sale. Indeed, there is not one scintilla of evidence that the sale to Cougar Gulch smacks of collusion, fraud or self dealing.[1] The Trustee followed the dictates of the Plan, and rejected lower sales bids until he negotiated a fair price with the present purchaser. The sole objection now raised by the insiders and the Debtor is that a better price can now be obtained from a late objecting third party. I repeat that the Debtor's president, after knowledge of the terms of the Cougar Gulch bid, incited Robertson's activities in this matter after two years of no success in selling the assets to Robertson. Neither Cougar Gulch or Robertson, who are competitors, are creditors of the Debtor's estate. The question then, is the price fair under the circumstances of the sale? Following *Abbotts, In re Snyder*, supra, holds:

> " 'Fair value' is given for property in a bankruptcy sale when at least 75% of the appraisal value is paid. *Abbotts*, 788 F.2d at 149. *Willemain v. Kivitz*, 764 F.2d 1019 (4th Cir.1985); in re The *Seychelles, Partnerships and Genius Corp. v. Banyan Corp.*, 32 B.R. 708 (N.D.Tex. 1983)." *Id.* at 878.

There has been no appraisal of the unique asset of the Debtor, and I seriously doubt one could be obtained. Rather the assets under scrutiny were exposed to the market for a reasonable length of time (not including the Debtor's continuing efforts to sell since 1986) and, after rejection of some bids, the Trustee determined that the present purchase price of $166,100.00 was fair value. I concur. Following the test of cases like *Abbotts* and *Snyder*, and even accepting that $202,000.00 may be the top

---

1. Indeed, under *Abbotts*, supra, a sale at this time to Robertson could be challenged on the grounds that such sale would "take grossly unfair advantage of other bidders".

market value, the purchase price in cash to be paid by Cougar Gulch is over 82% of the auction value of the assets to be sold. Under facts which show Robertson had the benefit of knowing the negotiated price between the Trustee and Cougar Gulch, and filed untimely objections to the sale, I conclude the sale of the assets to Cougar Gulch has been made in good faith and for fair value. There must always be some finality to Trustee's activities, for, as noted in footnote 1 above, serious challenge to the bid of Robertson, which has never been accepted by the Trustee or noticed for confirmation, could be made and the circuity of objections kept in the motion for an uncertain length of time. I therefore conclude the offer by Cougar Gulch is not so excessively low as to defeat fair value when all the factors of the sale are considered.

IT IS ORDERED the motions of the Trustee for sale of assets to Cougar Gulch, Inc. for $166,100.00 and William Ukrainetz for $10,000.00, plus a division of the proceeds after payment of the next $10,000.00 to the buyer, are granted and each sale is confirmed.