### In re VIII SOUTH MICHIGAN AS-SOCIATES, an Illinois Limited Partnership, Debtor.

### No. 93 C 7768.

United States District Court, N.D. Illinois, Eastern Division.

April 11, 1994.

See also 145 B.R. 912.

Gary Alan Weintraub, Barry A. Chatz, Gary A. Weintraub, P.C., Chicago, IL, for James R. Loewenberg, Marvin Fitch.

Gary Alan Weintraub, Gary A. Weintraub, P.C., George N. Vurdelja, Jr., Griswold L. Ware, George N. Vurdelja, Jr. & Associates, Chicago, IL, for Paul Cocose, William Cocose.

Gus Anthony Paloian, Seyfarth, Shaw Fairweather & Geraldson, George N. Vurdelja, Jr., Griswold L. Ware, George N. Vurdelja, Jr. & Associates, Chicago, IL, for Northern Trust Co.

David Michael Neff, Jenner & Block, Chicago, IL, for William H. Grabscheid.

### *MEMORANDUM OPINION AND ORDER*

ASPEN, District Judge:

James R. Loewenberg, Marvin Fitch, Paul Cocose and William Cocose (collectively, "Guarantors") appeal from the November 8, 1993 order of Bankruptcy Judge John D. Schwartz approving a settlement between the trustee of the estate of VIII South Michigan Associates and the Northern Trust Company ("Northern"). Presently before the court is Northern's motion to dismiss the appeal. For the reasons set forth below, Northern's motion is granted.

## I. Background

VIII South Michigan Associates ("Debtor") filed a petition under Chapter 11 of the Bankruptcy Code on December 3, 1991. On May, 14, 1992, Northern filed a secured claim for pre-petition loans made to Debtor which had been personally guaranteed by the appellants in the present action.[1] The bankruptcy court subsequently denied confirmation of the Debtor's Plan of Reorganization, and the case was converted to a Chapter 7 bankruptcy. A Trustee was appointed, and he assumed control over all of the Debtor's property, including all causes of action, claims, defenses, and setoffs.

On December 23, 1992, the Trustee received an offer from Northern to settle any and all claims held by the Debtor against it.[2] Three months later, the Trustee filed a motion with the bankruptcy court seeking authority to settle with Northern. The Trustee provided notice of the motion to all creditors and other parties in interest; only the Guarantors filed an objection. Some time thereafter, the Guarantors submitted their own offer to purchase the Debtor's claims against Northern.[3]

On October 25, 1993, the bankruptcy court held a pre-trial conference on the Trustee's motion to settle. At the conference, the Guarantors amended their earlier proposal, offering to pay $25,000 plus one-third of any *gross* recovery against Northern. Northern also submitted a new offer in the amount of $75,000 plus a percentage of any recovery against the Guarantors. The Trustee then accepted Northern's offer and rejected the Guarantors'. Although the Guarantors initially objected to the Trustee's acceptance of Northern's offer instead of theirs, they withdrew their objection later during the conference. In addition, the Guarantors withdrew their offer to purchase the claims.

On October 28 and 29, 1993, the bankruptcy court conducted an evidentiary hearing on the Trustee's motion to settle with Northern. The court heard testimony concerning the Debtor's claims against Northern, and made findings of fact and conclusions of law regarding the nature, value, and likelihood of success on the claims. On November 8, 1993, the bankruptcy court entered an order granting the Trustee's motion to settle with the bank. This order incorporated the court's findings of fact and conclusions of law.

## II. Discussion

■ On appeal, the Guarantors do not contest the result reached by the bankruptcy court, i.e., the decision to approve the settlement with Northern. Instead they contest the inclusion of findings of facts and conclusions of law in the court's order.[4] At core, the debate between the parties is whether the transaction between the Trustee and Northern was a "settlement" or a "sale." For if it was a "settlement," which is how the court, the Trustee, and Northern perceived it, then it is clear that the court was *required* to make the findings and conclusions at issue. *See In re American Reserve Corp.*, 841 F.2d 159, 162 (7th Cir.1987). The Guarantors, however, maintain that the transaction was, in fact, a "sale." As a result, the Guarantors argue, the court was not required to make any findings. *See, e.g., In re Snyder*, 74 B.R. 872, 877 (Bankr.E.D.Pa.1987) ("[W]hen there is no objection [to a sale], a trustee need not obtain a court order to sell property under § 363(b)(1).") (citation omitted).

■ We do not disagree with the Guarantor's basic premise: the bankruptcy court's involvement is not required when no objection is filed to the Trustee's proposed sale of property of the estate. § 363(b)(1) provides

---

1. The loans were also secured by a mortgage on the property at VIII South Michigan Avenue in Chicago.

2. Among the potential claims against Northern held by the Debtor was an allegedly preferential transfer subject to recovery under 11 U.S.C. § 547 as well as a fraud claim relating to the prepetition loans from the Bank to the Debtor. The Bank offered to pay $25,000 to settle the claims.

3. The Guarantors offered $25,000 plus one-third of any net recovery against Northern on the claims to be purchased.

4. The Guarantors' real concern is that Northern will use those finding to collaterally estop them in a related state court proceeding. Although we conclude that the bankruptcy court acted within its discretion in making the relevant findings and conclusions, we express no opinion as to any preclusive effect they may have.

that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." The phrase "after notice and a hearing" is defined in § 102 of the Bankruptcy Code:

> (1) "after notice and a hearing," or a similar phrase—
>
> (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but
>
> (B) authorizes an act without an actual hearing if such notice is given properly and if—
>
> (i) such a hearing is not requested timely by a party in interest....

Thus, in the absence of an objection to a proposed sale, § 363(b)(1), read in light of § 102(1)(B)(i), permits the sale of property of the estate without court involvement.

 The language of § 102(1)(B)(i), however, is not preclusive. Nothing in the language or legislative history of the Bankruptcy Code, or in any of the relevant caselaw, *prohibits* the bankruptcy court from holding a hearing and making findings, even when no interested party objects to the proposed sale. Indeed, prior to 1978, a trustee was required to apply to the court for affirmative approval of every proposed sale. The Bankruptcy Code of 1978 eliminated this requirement through § 363(b)(1) and § 102(1)(B)(i) in an effort to reduce the onerous supervisory and administrative duties which accompanied such a requirement. *See In re Sullivan Ford Sales,* 2 B.R. 350, 353–54 (Bankr.D.Me. 1980). Notwithstanding this change, however, bankruptcy reform did not go as far as the Guarantors urge in their appeal; the Code does not prohibit the bankruptcy court from taking on these tasks, if the court deems such an action appropriate. No court considering the scope of § 363(b)(1) has found otherwise.[5] As a result, regardless of whether the transaction between the Trustee and Northern was a sale or a settlement, the bankruptcy court's actions were proper.[6] Accordingly, Northern's motion to dismiss the Guarantors' appeal is granted.[7]

### III. Conclusion

For the reasons set forth above, appellee Northern Trust Company's motion to dismiss the appeal of James R. Loewenberg, Marvin Fitch, Paul Cocose, and William Cocose is granted. It is so ordered.

---

5. In *In re Robert L. Hallamore Corp.,* 40 B.R. 181 (Bankr.D.Mass.1984), the bankruptcy court concluded that, in the absence of an objection to a proposed sale, its approval of the sale was unnecessary and "inappropriate." In that case, however, the would-be purchaser's lending institution insisted on an order approving the proposed sale for recording purchases. The court refused, stating that its ruling was "only out of frustration with the repeated demands of the conveyancing bar and their clients, and their total unwillingness to accept change ... that ... the Court's patience has been tried by those who still insist on 'comfort orders.'" *Id.* at 183. In the present case, however, the bankruptcy court concluded that a hearing and findings were not only appropriate, but, given the history of the case, necessary. Accordingly, the analysis of *Hallamore* is inapposite.

6. We note, however, that it appears that the transaction was, as the bankruptcy court concluded, a settlement between the Trustee and Northern of the estate's claim against the latter, since the Guarantors had withdrawn both their offer and their objection by the time of the hearing. Thus, as we have already stated, the court's actions were not only permissible, they were required.

7. Northern also asserts that the appeal of two of the Guarantors, William Cocose and Paul Cocose, should be dismissed for failure to sign a Rule 8006 statement. Because we have dismissed the appeal as to all of the Guarantors, we need not reach whether the Cocoses' failing is grounds for dismissal. We note, however, that in support of its motion on this basis, Northern quoted and cited *In re Thompson,* 4 F.3d 997 (7th Cir.1993). *Thompson,* however, is an unpublished order, and may not be cited except in limited circumstances not present here. Seventh Circuit Rule 53(b)(2). Northern's direct violation of Rule 53(b)(2) is improper and sanctionable; we admonish Northern to be more careful in any future citations to "authority."