In re Irving S. KARPE and Eileen L. Karpe (t/a Yellow Cab Company and Lee Sales) Para–Transit Corporation Karpe Insurance Service Company, Debtors.

Bankruptcy Nos. 5–81–00384, 5–81–00385 and 5–81–00418.

United States Bankruptcy Court, M.D. Pennsylvania.

March 25, 1988.

As Amended May 4, 1988.

David S. Hope, Schader, Harrison, Segal & Lewis, Philadelphia, Pa., for debtors (Karpe).

John J. Thomas, Thomas & Pulaski, Wilkes–Barre, Pa., for Bradley Oliver, et ux.

Myles R. Wren, Nogi, Appleton, Weinberger & Wren, Scranton, Pa., for R.K.R. Hess Associates.

## MEMORANDUM AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

In this reorganization proceeding we have for consideration a "Motion for Hearing on a Higher Bid" filed by R.K.R. Hess Associates and its real estate entity, 304 Real Estate Partnership.

Following a hearing on November 17, 1987 counsel were directed to submit briefs. From the procedural history outlined therein, there appears to be no dispute regarding the essential facts. The question thus presented deals with the issue of whether the acceptance of a higher bid for property of the estate submitted by a third party who is neither a creditor or party-in-interest is proper under the Code.

Hereinafter set forth is a chronological accounting of the significant developments in this proceeding.

1. On May 12, 1981, Irving S. Karpe and Eileen L. Karpe, his wife, filed a proceeding under Chapter 11 of the Bankruptcy Code.

2. In May of 1984, Bradley and Rosalie Oliver negotiated a sales agreement with the Karpes for the sale of property located in the Borough of Stroudsburg (hereinafter the First Agreement) for the sum of $62,-910.00.

3. On July 2, 1986, counsel for the debtors filed a Motion for Free and Clear Sale pursuant to the First Agreement.

4. Hearings were scheduled on July 25, 1986 and August 29, 1986 on the Motion for Free and Clear Sale, but were continued at the request of counsel for the debtors.

5. Counsel for the debtors indicated to the Olivers that the First Agreement was defective and the debtors considered themselves not to be bound by its terms by letter dated March 16, 1987.

6. On or about April 3, 1987, counsel for the Olivers moved to compel transfer of the property pursuant to the First Agreement. No decision was entered on this motion, as the parties sought to reach an agreement as to the issues raised by debtor's counsel.

7. On July 2, 1987, this court approved a Stipulation which modified the First Agreement to provide for consideration in the amount of $105,000 to be paid by the Olivers to the Karpes and the settlement of disputed issues raised by counsel for the Olivers (Second Agreement).

8. Notice of the second Agreement was provided to all creditors and parties in in-

terest by mail on July 13, 1987, setting a final date for objections of August 3, 1987. The notice provided by counsel for the debtor at paragraph 7 contained the following language "Any creditor or party in interest may submit a higher offer in writing three (3) days prior to the proposed Sale at the office of the Debtor's counsel, whose address appears below and submit a copy to the Office of the Clerk of the Bankruptcy Court." This notice of sale was provided prior to approval of the Court of the motion to sell free and clear. A motion was not filed until August 19, 1987.

9. No objections were filed on or before August 3, 1987.

10. Debtor's Motion to sell real estate free and clear of liens to the Olivers for the sum of $105,000.00 was filed on August 19, 1987.

11. An order was entered on August 21, 1987 setting an objection date of September 8, 1987 and a hearing date of September 10, 1987 on the Motion to sell free and clear dated August 19, 1987. No objections were filed in regard to this order.

12. The order of August 21, 1987 was re-entered due to the lack of service on the part of the movant on September 14, 1987. This order set an answer date of September 29, 1987 and a hearing date of October 5, 1987. No objections were filed in regard to this order.

13. The order of September 14, 1987 was re-entered on September 29, 1987 for the lack of timely service on the part of the movant. This order set an answer date of October 14, 1987 and a hearing date of October 26, 1987. No objections were filed in regard to this order.

14. R.K.R. Hess Associates presented counsel for the debtors by letter dated September 17, 1987 an offer to purchase the real estate in question for the sum of $125,-000.

15. Counsel for the debtors requested a continuance of the hearing on its Motion for the approval of the sale of property under the provisions of the Second Agreement so that R.K.R. Hess Associates could set forth its position in this matter.

16. R.K.R. Associates filed the motion, which is the subject of this opinion, on November 2, 1987.

## DISCUSSION

Before we reach the central issue in this Chapter 11 proceeding, the conveyance of the real estate involved, we must first address the threshold procedural matter facing R.K.R. Hess Associates and its real estate holding entity, 304 Real Estate Partnership. Does R.K.R. Hess Associates have standing to present its Motion? We find it does not for the reasons hereinafter stated.

This action also requires our attention as to its conformity to 11 U.S.C. § 363 and Rules of Bankruptcy Procedure 6004 and 2002. Additionally, we find that the sales agreement between the Karpes and the Olivers is clearly within the guidelines adopted by the Third Circuit Court of Appeals in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir.1986). It also supports the concept of "finality" in this type of a proceeding, which is the third item that warrants our attention.

## I. STANDING

All parties to this matter in briefs submitted have raised and discussed the issue of standing as it relates to the Motion of R.K.R. Hess Associates. It is sufficient to state that there exists no clear guidance to direct our resolution on this issue. Counsel for Debtors is correct in his statement (Brief, p. 10), that it is clear the list of suggested "parties in interest" in Section 1109 of the Bankruptcy Code is not exclusive and that it is an issue for the Court to determine. Debtors' counsel, however, provides no legal basis for his position, in which he urges this court to grant standing to R.K.R. Hess Associates.

The following language found in the Bankruptcy Service, Lawyers Edition, at § 3:25 entitled "Parties in Interest" in pertinent part advances the following theory in determining who might be granted standing:

"The term 'party in interest' is not comprehensively defined in the Bankruptcy Code. Rather, nonexhaustive lists of those entities falling within the scope of the term are provided in certain of the statutory provisions, while, as to other instances, the legislative history suggests that the scope of term be left to the Rules of Bankruptcy Procedure or to local rules of the court.

Other indications in the legislative history support the view that it is for the court to determine who is a 'party in interest' in particular circumstances. (See H.Rept. No. 95–595, pp. 108–109). This would seem to be in accord with the law under the Bankruptcy Act of 1898, which also used the phrase 'party in interest' [See former 11 USCS § 93(d)]; under the predecessor provisions it had been held that the phrase included all persons who have an interest in the *res* which is to be administered and distributed in the proceeding, and did not include, for example, those who were merely debtors, or alleged debtors, of the bankrupt. [See *In re Sully* (1907, CA2 NY) 152 F.619, *cert. den.*, 206 U.S. 566, 51 L.Ed. 1191, 27 S.Ct. 793; *Rosenbaum v. Dutton* (1913, CA8 Mo.) 203 F. 838]."

If the logic advanced above is applied to the Motion of R.K.R. Hess Associates, it is clear that they are not a "party in interest" in this proceeding. R.K.R. Hess Associates has no interest in the *res* being created in this Chapter 11 proceeding, a *res* that would be created due to the execution of the sales agreement between the Olivers and Karpes. R.K.R. Hess Associates is an outsider to the agreement, who now desires to enter and increase the *res*, but not to benefit from it. R.K.R. Hess makes no claim to any portion of the *res* that is to be administered or distributed in this matter. The question of standing of parties to bring an action is a topic which has received extensive attention by the federal judiciary. It is from this treatment that we also find support for our conclusion that R.K.R. Hess Associates lacks standing to present this matter.

"The federal judiciary has ... adhered to a set of prudential principles that bear on the question of standing. ... The court has required the plaintiff fall within the 'zone of interests to be protected or regulated by the statute or constitutional guarantee in question'." *Valley Forge Christian College v. Americans for Separation of Church and State, Inc.*, 454 U.S. 464, 474–475, 102 S.Ct. 752, 759–760, 70 L.Ed.2d 700 (1982) [quoting *Association of Data Processing Services Orgs. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970)].

It must be stated at this point that it is the belief of this court that with the passage of the 1984 Act, the historical basis established under the Act of 1898 is again valid guidance and requires our attention when faced with similar matters.

As stated above, R.K.R. Hess Associates is not a creditor of the estate. Its only interest in this proceeding is that it wishes to purchase an asset of the estate. Thus, we must turn to the language of the relevant statute and rules to determine whether R.K.R. Hess Associates is one intended to be protected or regulated thereunder. See *Control Data Corp. v. Baldrige*, 655 F.2d 283, 293–294 (D.C.Cir.), *cert. denied*, 454 U.S. 881, 102 S.Ct. 363, 70 L.Ed 2d 190 (1981).

## II. SECTION 363 AND RULES 6004 and 2002

The Bankruptcy Code of 1978 brought to bankruptcy practice a major change in the procedures used for the sale of property of the estate. Section 363(b)(1) of the Code in pertinent part reads as follows:

(b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

The phrase "after notice and hearing" is defined in Code Section 102 follows:

(1) "after notice and a hearing", or a similar phrase—

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—

(1) such a hearing is not requested timely by a party in interest; or

\* \* \* \* \* \*

This section applies to a debtor-in-possession by virtue of Section 1107, which in pertinent part reads:

### § 1107. Rights, powers, and duties of debtor in possession.

(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

(b) Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

Again, R.K.R. Hess Associates is faced with the initial threshold question presented in its request, "Is it a party in interest to these proceedings?" Even assuming that R.K.R. Hess Associates does have standing or is a party in interest, we could not grant its motion for the following reasons.

The notice requirement and procedure for sales is set forth in Bankruptcy Rules 6004 and 2002. Rule 2002, Subsection (a) states as follows:

(a) **Twenty-day Notices to Parties in Interest.** Except as provided in Subdivisions (h), (i) and (k) of this Rule, [the clerks] shall give the debtors, the trustee, all creditors and indenture trustees not less than 20 days notice by mail of . . .

(2) a proposed use, sale, or lease of property of the estate other than in the ordinary course of business. . . .

The purpose of the notice is to provide an opportunity for objections and hearing before the court if there are objections. A notice is sufficient if it includes the terms and conditions of the sale, if it states the time for filing objections, and if the estate is selling real estate, it generally describes the property. Rule 6004 requires in pertinent part as follows:

(a) **Notice of Proposed Use, Sale or Lease of Property.** Notice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2) . . .

(b) **Objection to Proposal.** Except as provided in subdivision (c) or (d) of this rule, an objection to a proposed use, sale or lease of property shall be filed and served not less than five days before the date set for the proposed action or within the time fixed by the court. An objection to the proposed use, sale or lease of property is governed by Rule 9014.

Rule 9014 requires that relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court orders an answer to a motion.

In the absence of objections or counteroffers, a sale in accordance with § 363, Rule 6004 and Rule 2002 does not require court approval. See Bankruptcy Rule 6004 Advisory Committee Note. However, when this approval is requested of the court, some have suggested that it must be dealt with under the guidelines established by the Third Circuit in the opinion of *Abbott, supra,* an issue which we will address. However, at this point it is necessary to return to a discussion of the facts presented in this matter.

The notice provided to all parties dated July 13, 1987 (which was procedurally incorrect) contained language which we find to be gratuitous and upon which counsel for R.K.R. Hess Associates has based his position. Again, assuming that R.K.R. Hess Associates had standing or was a

party in interest, the present motion was filed beyond the last date for objections. Its position is unsupportable given that the last date for the filing of objections was October 14, 1987 and the date of its motion was November 2, 1987, some 19 days following the objection date. Further, the record indicates that R.K.R. Hess Associates' counsel by letter dated September 17, 1987 communicated to counsel for the debtor a higher offer. But it, R.K.R. Hess Associates, also failed to comply with the language of that notice upon which it now relies. The notice required that higher offers were to be submitted to the office of debtor's counsel as well as to the Clerk of the Bankruptcy Court. There is no official docket entry to reflect compliance with this requirement, submission to the Clerk of the Bankruptcy Court. The offer was, however, brought to the attention of the court by a letter from debtor's counsel on September 23, 1987, advising the court of the higher offer.

Counsel for R.K.R. Hess Associates at page 4 of his Brief gains little support for his position by quoting the notice sent by counsel for the Karpes. "Thus, on this reason, R.K.R. Hess Associates higher offer cannot be attacked, as the notice clearly sets forth 'that any creditor' or 'party in interest' may submit a higher offer in writing three days prior to the proposed sale at the office of the debtors' counsel." It is sufficient to state at this juncture that we find R.K.R. Hess fails to meet either qualification set forth in the notice for submission of a higher bid, i.e., that of a creditor or "party in interest."

Under the presently accepted interpretation of § 363 and Rules 6004 and 2002, the language quoted above from the notice mailed by debtors' counsel upon which R.K.R. Hess Associates relies is as previously indicated purely gratuitous language. See *In re Robert L. Hallamore Corporation*, 40 B.R. 181, 183 (Bankr.D.Mass.1984) for a position similar to that we have taken concerning what is required by the rules concerning notice of sales under § 363(b)(1). Counsel for R.K.R. Hess does not provide any other reasoning or support for his lack of timeliness except his reliance upon the

notice. He, in fact, at page 4 of his Brief sets out the requirements of Rule 6004(b) concerning time limits for objections. Even in a light most favorable to R.K.R. Hess Associates, it clearly did not meet the requirements of this Rule, but instead seeks relief based upon the language in the said notice. The date was set by an order of this court, again using a date most favorable to any creditor or party in interest. These parties could have filed an objection by the date given, October 14, 1987. No objections, however, were filed by any creditor or party in interest by that date.

### III. FINALITY

The case of *In re Snyder*, 74 B.R. 872 (Bankr.E.D.Pa.1987) at 877 presents a means by which this action may be considered. The reasoning, derived from facts, is similar to those present in this matter.

> "However, in the matter at bench, the trustee and buyer seemed to desire the court sanction even if no objections were filed, for they have conditioned sale upon obtaining court approval and will schedule closing only after obtaining a court order. In so doing, the parties may have inadvertently triggered the *Abbotts* requirement, which literally applies to all court approved sales, even if no timely objection is filed."

The *Abbotts* requirements as stated by the Third Circuit Court of Appeals are as follows:

> "In short, we hold that when a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser.
>
> ... First, the bankruptcy court, given its greater familiarity with parties and proceedings, represents the forum best able to make such a determination in the first instance. *Second, it encourages finality of the bankruptcy's court judgments under section 363(b)(1)*, because it places prospective appellants on notice of the need to obtain a stay pending appeal, or face dismissal for mootness

pursuant to section 363(m), should the district court affirm the bankruptcy court's finding of good faith. Finally, such a procedure ensures that section 363(b)(1) will not be employed to circumvent the creditor protections of Chapter 11, and, as such, it mirrors the requirement of section 1129, that the bankruptcy court independently scrutinize the debtor's reorganization plan and make a finding that it 'has been proposed in good faith and not by any means forbidden by law' ". 11 U.S.C. § 1129(a)(3). *In re Abbotts Dairies, supra,* at 149, 150. (Emphasis added).

It is the issue of finality, raised in the above position of the Third Circuit, to which we now turn our attention. Finality of judicial sales is a concept clearly supported by this Circuit. In a recent decision we had the occasion to restate the position of the Third Circuit Court of Appeals on this matter. *In re Stanley Engineering Corporation,* 164 F.2d 316 (C.A.A. 3rd 1947) has long been regarded as the leading case in this Circuit. The following appears at page 318:

"That judicial sales, made upon due notice and in accordance with law, will be confirmed unless (a) there was fraud, unfairness or mistake in the conduct of the sale; or (b) the price brought at the sale was so grossly inadequate as to shock the conscience of the court and raise a presumption of fraud, unfairness or mistake. Mere inadequacy of price is not a sufficient ground for setting aside a judicial sale where there was no unfairness in the conduct of the sale. In determining whether gross inadequacy exists the bankruptcy court must take into consideration appraisement of the property as a guide in the exercise of its discretion in accordance with the intendment of the statute cited. Where the bankruptcy court fails to confirm a judicial sale in the absence of unfairness, fraud, or mistake or gross inadequancy of price, its action will be reversed on the ground of abuse of its legal discretion.

We subscribed to the principles enumerated in *Jacobsohn v. Larkey,* 3rd Cir., 1917, 245 F. 538, p. 541, L.R.A.

1918C, 1176. In doing so we stated as follows:

Judicial sales are an indispensable part of the machinery employed in administering bankrupt estates. Public policy requires stability in such sales. *The Ruby,* D.C. 38 F. 622; *In re Burr Mfg & Supply Co.,* 2d Cir., 217 F. 16, 19, 133 C.C.A. 126. To induce bidding at such sales and reliance upon them, the purpose of the law is that they shall be final. *Pewabic Mining Co. v. Mason,* 145 U.S. 349, 356, 12 S.Ct. 887, 36 L.Ed. 732; they are not to be disturbed except for substantial reasons.

After much experience in scrutinizing bidding at judicial sales, courts now uniformly hold that the mere offer to pay more than the price bid is not a substantial ground for setting aside a sale, recognizing nothing will more certainly tend to discourage and prevent bidding than a judicial determination that the highest bidder may be deprived of the advantage of his accepted bid by an offer of another person, subsequently made, to bid higher on resale. *Morrisse v. Inglis,* 46 N.J.Eq. 306, 19 A.16; *In re Metallic Speciality Mfg. Co.,* D.C., 193 F. 300; *In re Shapiro,* D.C. 154 F. 673."

Finality in proceedings such as this is essential to the role of judicial sales in plans of reorganization proposed by debtors-in-possession. "Nonetheless, it is important that the bidder receive what he had reason to expect, and that nothing impair public confidence in the regularity of judicial sales." *In re Gil–Bern Industries, Inc.,* 526 F.2d 627 (1st Cir.1975) at 629. The importance of this concept is fully indicated below:

"The necessity of maintaining the integrity of the Court's judicial process, even at the expense of bringing less money into the bankruptcy estate was recognized in *In re Gil–Bern,* 526 F.2d 627 (1st Cir.1975), a case in which a third party who made an overbid on a proposed private sale complained because he was required to engage in further bidding beyond his initial overbid. The court disapproved any irregular proce-

dure and remanded the case after stating:

> 'It might not only be thought improper for a bankruptcy court to proceed in an irregular fashion, but in the long run it would be penny wise and pound foolish. Creditors in general would suffer if unpredictability discouraged bidders altogether. At least such a procedure might encourage low formal bids ... 526 F.2d at 629.'

*In re Table Talk, Inc.,* 53 B.R. 937 (Bankr.D.Mass.1985) at 945."

All parties to these proceedings acknowledge that the agreements entered into by the Karpes and Olivers have been entered into in "good faith." (See Debtors' Brief, p. 5; Olivers' Brief, p. 8; and R.K.R. Hess' Brief, p. 2). Thus, there appears from the statements of the parties no indication or need to explore the conduct of the parties to this action to assess their conduct. It can be stated from the facts herein that the Olivers have acted in "good faith" in this matter.

■ The other central aspect which must be addressed in this situation is that of "fair value." We find in this instance that fair value has been given in light of the reasoning of *Abbotts.* The Olivers' offer of $105,000 was the result of renegotiations. The offer of the Olivers is either the market value of the property in question or alternatively it is the "fair value" as set forth in *Abbotts.* This property has no appraised value of record. We, however, have been asked by counsel for the debtor (Debtor's Brief, p. 8) to accept as the value of the property that which is determined by the bidding process. Since no higher bid has been offered by a "party in interest", the Olivers have offered its market value. Arguendo, if one accepts the offer of R.K. R. Hess Associates of $125,000 as the market value, the Olivers have offered "fair value", as the offer of $105,000 equals 84% of the amount offered by R.K.R. Hess Associates.

■ "Fair value" is given for property in a bankruptcy sale when at least 75% of the appraised price is paid. *Abbotts,* 788 F.2d at 149; *Willemain v. Kivitz,* 764 F.2d 1019 (4th Cir.1985); *In re The Seychelles, Partnership and Genius Corp. v. Banyan Corp.,* 32 B.R. 708 (N.D.Tex.1983); *In re Snyder, supra,* at 878.

■ It thus appears that when the present matter is viewed in light of the guidance provided in *Abbotts,* it meets the mandate and direction of the Third Circuit. The agreement was reached in "good faith" by the parties and for "fair value."

This case is unlike that of a Chapter 7 proceeding where the Trustee is under an obligation to seek the highest price for property of the estate on behalf of all creditors. In this Chapter 11 proceeding this proposed sale is part of the plan of reorganization, a plan which all "parties in interest" are given the opportunity to approve or reject. No "party in interest" has raised an objection and as indicated in the record, no creditor has objected or opposed this sale to the Olivers.

The last element presented in this matter is one of equity. Since we have not been specifically asked or directed to address this issue, it is sufficient to address the following comment in Debtors' Brief at page 8. "There is certainly equity on the side of the Olivers. After all, they did negotiate in good faith for the terms and conditions of the Second Agreement."

■ It must be recognized that the Bankruptcy Court is essentially a court of equity and its proceedings are inherently proceedings in equity. It has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in the administration of the Bankrupt's estate. *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

Equity would demand on facts such as those presented in this matter that specific performance be considered in regard to the agreement between these parties. Considering the facts as they exist, such is our decision.

It is our conclusion that equity demands the transfer of the property to the Olivers as per the Agreement between them and the debtors. An order follows herein.

This Memorandum decision constitutes the Court's findings of facts and conclusions of law in the above matter pursuant to Bankruptcy R.P. 7052 and Federal Rules of Civil Procedure 52.

## ORDER

ORDERED that the debtors, Irving S. Karpe and Eileen Karpe, transfer the real property that is the subject of this proceeding, to Bradley Oliver and Rosalie Oliver, as per the terms of their Agreement dated July 1, 1987; and further

ORDERED that the Motion for Hearing on Higher Bid filed by R.K.R. Hess Associates is DENIED; and further

ORDERED that the clerk of the court file this document as the judgment of the court.