**In re CRESCENT MANUFACTURING COMPANY, Debtor.**

**Bankruptcy No. 1–90–01525.**

United States Bankruptcy Court, N.D. Ohio, W.D.

Dec. 4, 1990.

John Brody, Larry McClatchey, Columbus, Ohio, for debtor.

Dean Wyman, Cleveland, Ohio, Office of U.S. Trustee.

Michael Bragg, Toledo, Ohio, Richard Toder, New York City, for Teachers.

Thomas Heintschel, Toledo, Ohio, for Squibb.

Thomas Schank, Toledo, Ohio, for the Committee.

Shawn Riley, Cleveland, Ohio, for Scarborough Group.

David Naftzinger, Cleveland, Ohio, for the Bank.

OPINION AND ORDER GRANTING EXTENSION OF DEBTOR'S EXCLUSIVE TIME AND DENYING APPLICATION FOR EMPLOYMENT OF TGI FINANCIAL, INC.

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on for hearing upon Debtor's motion for extension of Debtor's exclusive time to obtain acceptance of plan, to which objections were filed by the Scarborough Group and the Unsecured Creditors' Committee and upon Debtor's application for employment of TGI Financial, Inc. as financial consultants and supplemental memorandum in support thereof to which objections were filed by Teachers Insurance and Annuity Association of America and the Unsecured Creditors' Committee. Upon consideration of the evidence adduced at the hearing, the court finds that Debtor shall be granted the exclusive right to file an amended plan until January 10, 1991, except that the Unsecured Creditors' Committee shall be permitted to file a plan after December 29, 1990 and that Debtor's application to employ TGI Financial, Inc. is not well taken and should be denied.

## FACTS

Debtor, a manufacturer of industrial cutting blades for commercial and consumer use, filed its voluntary petition under chapter 11 of title 11 on May 4, 1990. On August 31, 1990, Debtor filed its disclosure statement and chapter 11 plan. Objections to the disclosure statement and plan were filed by the First National Bank of Boston and Bancboston Financial Company (the Bank), the unsecured creditors' committee (the Committee) and Teachers Insurance and Annuity Association of America (Teachers). At the disclosure hearing, Debtor was granted leave to file a first amended disclosure statement and first amended plan on or before November 9, 1990.

On November 1, 1990, Debtor filed the instant motion for extension of Debtor's exclusive time to obtain acceptance of plan, requesting an extension of its exclusive time, until January 31, 1991, during which it would have the opportunity to obtain confirmation of its plan. An objection was filed by the Scarborough Group stating that such an extension is not in the best interests of Debtor's estate or its creditors and that Debtor has failed to establish "cause" sufficient for an extension. The Committee also objected to Debtor's motion claiming that "cause" has not been shown. Although no written objection was filed by the Bank, its counsel orally requested that its objections to this motion be considered by the court. The Bank's counsel stated that while it believed earlier that progress in proposing a plan had been made, it determined, prior to the hearing, that this was not true. Additionally, the Bank asserts that the exclusivity period has expired by its terms and that permitting the filing of competing plans is necessary and in the estate's best interest. At the hearing, counsel for Debtor and the Committee stated that they had agreed that Debtor should be granted until January 10, 1991, to file an amended disclosure statement and amended plan and that the Committee may file a plan after December 29, 1990. Debtor requested that its motion be modified to request an order approving this agreement.

Additionally, Debtor, on October 19, 1990, filed an application for employment of TGI Financial, Inc. as financial consultants for Debtor. Debtor, prior to the hearing, filed a supplemental memorandum requesting court approval for the employment of TGI nunc pro tunc, and permitting the payment of a reasonable compensation for services rendered by TGI. The Committed objected to this application for the reasons that the services performed by TGI are duplicative of services performed by other professional persons and that prior approval of TGI's employment was not obtained. Teachers concurs in these objections.

## DISCUSSION

■ Initially, the court will discuss the standing of the Scarborough Group. Although its attorney filed an objection to Debtor's motion for extension and appeared at the hearing, the court did not permit counsel the opportunity to examine witnesses or make oral argument, as it found Scarborough to be without standing.

Section 1109 of title 11 permits a "party in interest" to "raise and ... appear and be heard on any issue in a case under this chapter." Although § 1109 states that a party in interest includes "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee," this list is not exhaustive. *See* 11 U.S.C. § 102(3).

Whether party in interest status should be afforded an entity is to be determined on a case by case basis. *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849, 21 C.B.C. 331 (Bkrtcy.S.D.N.Y.1989).

> Although § 1109(b) ought to be construed broadly, if a party is not affected by the reorganization process it should not be considered a party in interest. Only those parties sufficiently affected by a Chapter 11 proceeding should be able to appear before it and be heard.... Consequently the party requesting standing must either be a creditor of a Debtor to invoke the court's jurisdiction or be able to assert an equitable claim against the estate.

*Id.* 101 B.R. at 849 (citations omitted).

In *In re Karpe*, 84 B.R. 926, 18 C.B.C.2d 1313 (Bkrtcy.M.D.Pa.1988), the court was asked to determine whether an interested purchaser had standing to assert an objection to the sale of estate property, where that purchaser filed an untimely bid. The court first indicated that movant was not a creditor of the estate; rather, movant's "only interest in this proceeding is that it wishes to purchase an asset of the estate." *Id.* 84 B.R. at 929. The court then analyzed whether movant fell within " 'the zone of interests to be protected or regulated by the statute.' " and concluded that the purchaser was not a party in interest. *Id.* (citations omitted).

Scarborough is not a creditor of this estate; it is an interested purchaser of Debtor's assets or business. As such, Scarborough will not be affected by the reorganization. While it may increase the res available for distribution to creditors, it will not benefit from this estate. *See Karpe*, 84 B.R. at 929; *Ionosphere*, 101 B.R. at 850 (movant has no right to payment nor will reorganization affect any vital interest of movant as it has no direct financial relationship with Debtor). Furthermore, the court is wary to permit the interjection of peripheral parties that may thwart the goal of a speedy and efficient reorganization. *Ionosphere*, 101 B.R. at 850–51. Because Scarborough represents only a perspective purchaser, the court, as opined at the hearing, finds that it is without standing to object to the instant motions.

*Motion for Extension of Debtor's Exclusive Time*

Debtor's original motion requests "an extension of its exclusive time until January 31, 1991, during which [it] will have the opportunity to obtain confirmation of its plan." Motion for Extension at 1. However, as previously stated, Debtor indicated at the hearing that it seeks authorization, until January 10, 1991, to file an amended disclosure statement and plan and to prohibit the Committee from filing a plan until after December 29, 1990. Counsel for the Committee stated that it would withdraw its objections to Debtor's motion conditioned upon the court's approval of this proposal. As discussed, the court finds that Scarborough lacks standing to advance its objections previously filed with the court. The Bank objects to Debtor's motion claiming that the exclusivity period has expired pursuant to statute and that any party in interest should be permitted to file a plan.

Section 1121(b) permits Debtor the exclusive right to file a plan "until after 120 days after the date of the order for relief." That section also prohibits a party in interest from filing a plan unless Debtor has failed to file a plan "that has been accepted, before 180 days after the date of the order for relief." 11 U.S.C. § 1121(c)(3).

Debtor filed its petition on May 4, 1990 and its plan on August 31, 1990, 119 days after entry of the order for relief. Although a disclosure hearing was scheduled and held, objections were filed which prohibited approval of that disclosure statement and the subsequent scheduling of a hearing upon confirmation of the plan. Recognizing the Bank's objection regarding the timeliness of Debtor's motion for exten-

sion, the court finds that same should be overruled. Debtor's plan has not, to date, been accepted and more than 180 days has elapsed since entry of the order for relief. Indeed, 181 days elapsed before the filing of the instant motion for extension.

■ Initially, the court notes that Bankruptcy Rule 9006(b)(1) permits the enlargement of time "on motion made after the expiration of the specified period ... where the failure to act was the result of excusable neglect." Mr. Charles Bayer, president of Debtor corporation, testified that he intended to extend the necessary time for consideration of its plan and requested that his attorney prepare an appropriate motion. Additionally, Mr. Bayer stated that Debtor's former attorney withdrew at his insistence. In fact, that attorney moved to withdraw on November 14, 1990. Given these facts and because the instant motion was filed one day after expiration of the 180 day period, the court finds that "excusable neglect" exists permitting this court to consider the instant motion. *Cf. In re Cramer, Inc.*, 105 B.R. 433 (Bkrtcy.W.D. Tenn.1989).

Having found that the instant motion for extension is properly before this court, the court must next consider if Debtor has established "cause" for the requested extension. That is, § 1121(d) permits the court to increase the period "for cause." Cause, while not defined by statute, may, according to the legislative history, be established by " 'a showing of some promise of success.' " *In re Perkins,* 71 B.R. 294, 298, 16 B.C.D. 103 (W.D.Tenn.1987) (citing 1978 U.S.Code Cong. & Admin.News at 5787, 5904). Additionally, " '[c]ause might include an unusually large ... case.' " *Id.* 71 B.R. at 297.

Other factors which have been considered by courts include whether some progress has been made regarding acceptance of a plan, and whether the "sheer mass, weight, volume and complication of the [ ] filings ... justify a shakedown period." ... However, "extensions are impermissible if they are for the purpose of allowing the debtor to prolong reorganization pressuring a creditor to accede to its point of view on an issue in dispute."

*Id.* 71 B.R. at 298 (citations omitted). *See also In re Texaco Inc.*, 76 B.R. 322, 16 B.C.D. 213, 16 C.B.C.2d 169 (Bkrtcy.S.D.N. Y.1987) (extension is warranted in order to allow an opportunity to negotiate an acceptable plan).

■ Mr. Bayer testified that the Bank holds a first lien valued at approximately $734,000 and an industrial revenue bond of approximately $1,618,000. Teachers is owed some $4,000,000. Another creditor, Squibb, who did not object to the instant motions, is owed $7,000,000. Additionally, the unsecured creditors have outstanding amounts. Given these figures, this case represents a large chapter 11. Furthermore, Mr. Bayer stated that he has been negotiating with the Bank and Teachers in an attempt to modify the plan, satisfying these creditors. According to Mr. Bayer's undisputed testimony, Debtor has complied with the cash collateral order, entered seven days after the filing of Debtor's petition, and to which the Bank agreed, and has maintained its collateral levels. Debtor presently has back orders approaching $4,000,000. Finally, Mr. Bayer indicated that Debtor's business operations are in line with the budget projections and that its cash account is currently in excess of $1,000,000.

Given these facts, the court finds that Debtor should be granted until January 1, 1991, to file an amended disclosure statement and amended plan. This permits Debtor about five weeks to continue its negotiations, unimpeded. Furthermore, the Committee may file a plan after about four weeks. This case has been pending for seven months and a plan, although unconfirmable in its present state, has been filed. Granting this brief extension does not appear detrimental or prejudicial to creditors or Debtor's estate. Lastly, no evidence was presented reflecting that this extension was sought "as a tactical device to put pressure on parties in interest to yield to a plan they consider unsatisfactory." *Perkins,* 71 B.R. at 298 (citing legislative history); *Texaco,* 76 B.R. at 327. As referenced,

Debtor's immediate, pressing needs at the outset of the case for the use of cash

collateral ... were all dealt with promptly....

\*　　\*　　\*　　\*　　\*　　\*

In light of this background, the short additional [five week] extension now requested for both filing the plan and obtaining acceptances is clearly reasonable. *In re United Press Intern., Inc.*, 60 B.R. 265, 269, 14 B.C.D. 425 (Bkrtcy.D.Dist.Col. 1986). Debtor's request for extension of its exclusivity period until January 10, 1991 is granted.

*Application for Employment of TGI Financial, Inc.*

As previously stated, Debtor now requests nunc pro tunc approval for the employment of TGI with compensation for services rendered in October, 1990. Generally, a professional person must be appointed before he is entitled to compensation. *See In re B. Miller,* 76 B.R. 621, 623 (Bkrtcy.S.D.Ohio 1987) (citations omitted). However, in appropriate circumstances, an appointment may be made after services are rendered. *Id.* In making such a determination, the court must determine

> whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors.

*In re Arkansas Co., Inc.,* 798 F.2d 645, 650 (3d Cir.1986). ■ Additionally, the court should not grant a motion for appointment nunc pro tunc and allow fees if a timely application would have been denied because applicant failed to satisfy the statutory requirements, including that applicant be disinterested and that applicant not hold any interest adverse to the estate. *Id.* at 650. *See Matter of Triangle Chemicals, Inc.,* 697 F.2d 1280, 1284 (5th Cir.1983) (while the rules contemplate court approval prior to attorney's employment, they do not in terms or necessary implication prohibit the court in its discretion and in exercising its powers as a court of equity from granting its approval nunc pro tunc, at a date subsequent to the employment and after the services are rendered, providing that the required showing is made warranting the approval). While the *Arkansas* court agreed that bankruptcy courts, as courts of equity, may authorize retroactive employment of a professional person, that court required applicant to demonstrate extraordinary circumstances prior to granting retroactive approval of employment.

■ Initially, the court notes that no representative of TGI appeared and offered testimony at the hearing. Furthermore, Mr. Bayer's testimony reflected that the hiring of TGI was at the Bank's insistence. TGI services were to include evaluating the operations of Debtor for refinancing and offering other financial advice. TGI contacted possible investors in an effort to provide cash infusion to Debtor. The court is not persuaded that TGI's services were beneficial or necessary, nor is the court persuaded that an emergency existed, necessitating TGI's rendering of services prior to court approval.

On July 26, 1990, Debtor applied for approval of its request to employ Ernst & Young as financial advisors. Debtor sought to employ this firm in order to aid it in

> (a) auditing and analyzing all relevant books and records of the debtor;
> (b) assisting the Debtor in preparation and implementation of a business plan, including cash flow and/or other projections;
> (c) performing any other services that may be requested by the Debtor and its legal counsel.

Application to Employ Accountants and Financial Advisors at 2 (July 26, 1990). As a result of objections to this application, a hearing was held on August 2, 1990 at which time the court overruled the objections and granted an application. An order reflecting this ruling was not submitted by Debtor's former attorney until September 21, 1990. The court finds that the services performed, and to be performed, by Ernst & Young are necessary and beneficial and represent a duplicity of services performed

by TGI. The court finds that Debtor's request for employment of TGI is not well taken.

Additionally, Debtor has failed to establish an emergency which existed at the time TGI began performance of its services. Before the court can permit a nunc pro tunc appointment, Debtor must establish some extraordinary circumstance which obviated its obligation to seek prior approval of the employment. Lastly, the court has some concern that TGI does not represent a disinterested person as required by § 327, but will not reach that issue.

In light of the foregoing, it is therefore

ORDERED that Debtor be granted the exclusive right until January 10, 1991, to file an amended disclosure statement and amended plan; the unsecured creditors' committee is granted the right to file a plan after December 29, 1990. It is further

ORDERED that Debtor's application for employment of TGI Financial, Inc. as financial consultants be, and it hereby is, denied.