**In re GULF STATES STEEL, INC. OF ALABAMA, Debtor.**

No. 99–41958–JSS–7.

United States Bankruptcy Court, N.D. Alabama, Eastern Division.

Nov. 18, 2002.

---

**7.** The Court is prepared to issue any order necessary to facilitate returning the parties to the *status quo ante.*

Harry P. Long, Anniston, AL, for trustee.

Jeffrey Herman, Los Angeles, CA, for Ableco Finance LLC.

Mark Williams, Birmingham, AL, for Gadsden Industrial Park, LLC.

Richard H. Cater, Anniston, AL, for Gulf States Reorganization Group, Inc.

Ralph Strawn, Gadsden, AL, for Objecting Bondholders.

## ORDER ON MOTIONS FOR STAY PENDING APPEAL AND MOTION TO LIMIT NOTICE

JAMES S. SLEDGE, Bankruptcy Judge.

This case came before the Court on November 6, 2002, for hearing on two separate motions for stay pending appeal filed by Gulf States Reorganization Group, Inc. (hereinafter "GSRG") and certain holders of the Secured Mortgage Notes (hereinafter the "Objecting Bondholders"). Additionally, GSRG, joined by the Objecting Bondholders, filed a motion to limit service of the Notice of Appeal.

Taking the motions to limit service of the Notice of Appeal first, Fed. R. Bankr.P. 8004 requires the clerk of court to send a copy of the Notice of Appeal to counsel of record of each party other than the appellant or, if not represented, to the party's last known address. Movants requested the Notice of Appeal only be sent to certain specified parties. Since the request is not allowed by Fed. R. Bankr.P. 8004, the Motion to Limit Service is denied.

Previously, this Court entered a Sale Order on September 27, 2002 approving the Trustee's decision to sell certain assets of the debtor to Gadsden Industrial Park, LLC. An Order denying GSRG's and Objecting Bondholders' Motion to Alter or Amend Sale Order was entered October 24, 2002. GSRG filed its Notice of Appeal on October 25, 2002. Objecting Bondholders filed their Notice of Appeal on October 28, 2002.

At the hearing for stay pending appeal, GSRG presented evidence that there would be some depreciation of the assets involved with the sale order, but the depreciation would not be significant. Evidence was also presented that until the sale was closed, overhead and maintenance would have to continue. The monthly cost of maintaining the property with utilities and security is about $100,000 to $105,000 per month. These costs are currently being paid by Ableco Finance, LLC, the senior priority lienholder. Ableco's obligation to pay these cost would cease when its security interest terminates.

With respect to the motions for stay pending appeal, Fed. R. Bankr.P. 8005 provides in part that the bankruptcy judge may suspend proceedings or make other appropriate order in the case under the Code that has been appealed so as to "protect the rights of all the parties in interest." *Id.* The court is free to set terms or conditions, including a bond, upon the granting of the motion. "The district court or the bankruptcy appellate panel may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the bankruptcy court." *Id.*

In deciding whether to grant the stay, the law is clear that the standard for granting a stay pending appeal is the same as that for the grant of a preliminary injunction. *In re Shunnarah,* 273 B.R. 671 (M.D.Fla.2001); *In re Dobslaw,* 20 B.R. 922 (Bankr.E.D.Pa.1982). Four factors must be considered in determining whether to issue a stay pending appeal under this test:

1) whether the movant has shown a likelihood of success on the merits;

2) whether the movant has made a showing of irreparable injury if the stay is not granted;

3) whether the granting of the stay would substantially harm the other parties; and

4) whether the granting of the stay would serve the public interest.

The failure to satisfy any one prong of the standard for granting a stay pend-

ing appeal justifies denial of the motion. *Tooke v. Sunshine Trust Mort. Trust,* 149 B.R. 687, 689 (M.D.Fla.1992).

■ The Court finds that the movants have failed to show any likelihood of success on the merits. The basis for this finding is the conclusion the both movants lack standing to pursue the appeal. As such, there can be no likelihood of success on the merits. The Court bases its conclusion of the absence of standing on the Eleventh Circuit case of *In re Westwood Community Two Association, Inc.,* 293 F.3d 1332 (11th Cir.2002), wherein the Circuit set forth the standard to appeal a bankruptcy court's order. According to the Circuit, only "aggrieved persons" have standing to appeal bankruptcy court orders.

■ The Eleventh Circuit defined "aggrieved" parties in the bankruptcy context as "those parties having a 'direct and substantial interest in the question' being appealed." *Id.* at 1335 citing *In re Odom,* 702 F.2d 962, 963 (11th Cir.1983). "Bankruptcy's person aggrieved doctrine restricts standing more than Article III standing, as it allows a person to appeal only when they are 'directly and adversely affected pecuniarily by the order.'" *Westwood Community* at 1335 quoting *In re Troutman Enter., Inc.,* 286 F.3d 359, 364 (6th Cir.2002). Parties must have a financial stake in the order being appealed in order to have appellate standing. *Id.* at 364. A financial stake requires a diminishment of property, increase in burdens, or an impairment of rights. *Troutman,* 286 F.3d at 364.

■ Here, movants failed to show they have any pecuniary interest in the Sale Order they wish to appeal. GSRG has argued that its shareholders own bonds and assert a claim against the estate, but those rights do not belong to GSRG. Even

if the individual bondholders transferred their claims to GSRG, which has never been presented to this Court, those claims are still based upon the bonds on which only the Indenture Trustee has standing to act. At least as far as GSRG is concerned and presented to this Court, GSRG is not a creditor and nothing more than an unsuccessful bidder. There are numerous authorities which hold that a non-creditor, whose only connection with a bankruptcy case is that the party was an unsuccessful bidder at a bankruptcy sale, lacks standing to challenge the right of other bidders to consummate the sale. *See, e.g., Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.),* 111 F.3d 269, 273 (2nd Cir.1997) (recognizing that, although not an absolute rule, "an unsuccessful bidder ... usually lacks standing to challenge a bankruptcy court's approval of a sale transaction."); *In re Broadmoor Place Investments, L.P.,* 994 F.2d 744, 746 n. 2 (10th Cir.1993), cert. denied, 510 U.S. 1071, 114 S.Ct. 877, 127 L.Ed.2d 73 (1994); *In re Harwald Co.,* 497 F.2d 443, 444–45 (7th Cir.1974); *In re Crescent Mfg. Co.,* 122 B.R. 979, 981 (Bankr.N.D.Ohio 1990); and *In re Karpe,* 84 B.R. 926, 928–29 (Bankr.M.D.Pa.1988).

■ "A competing bidder normally lacks standing to even challenge a sale, much less seek reconsideration of an order approving sale." *In re Quanalyze Oil & Gas Corp.,* 250 B.R. 83 (Bankr.W.D.Tex. 2000); *In re HST Gathering Co.,* 125 B.R. 466, 468 (W.D.Tex.1991). The court in *HST Gathering* observed that bidders are not within the "zone of interests intended to be protected" under the bankruptcy statutes. *Id.* citing *In re Planned Systems, Inc.,* 82 B.R. 919, 922 (Bankr.S.D.Ohio 1988); *Big Shanty Land Corp. v. Comer Properties, Inc.,* 61 B.R. 272, 277 (N.D.Ga.1985). "[An] unsuccessful bidder—whose only pecuniary loss is the speculative profit it

might have made had it succeeded in purchasing property at an auction—usually lacks standing to challenge a bankruptcy court's approval of a sale transaction." *Id.* citing Lawrence P. King, Collier on Bankruptcy ¶ 5.06 (15th ed. rev.1996).

█ The Objecting Bondholders made the argument they have standing as they are a creditor of the debtor's estate. While it is highly questionable that the Objecting Bondholders are creditors of the bankruptcy estate considering the nature of the Trust Agreement and the status of the Indenture Trustee, the Court finds that even if the Objecting Bondholders are creditors, they failed to show they have standing.

In the *Quanalyze Oil & Gas* case, *supra,* the court was dealing with a challenge by a purported equity interest owner. The court held "Yet here too, standing can be a problem, for equity interest owners must demonstrate that they have a pecuniary interest in the outcome of the matter to have standing, and that usually means making at least a prima facie showing that there is enough value in the estate to pay all creditors in full and have enough left over to pay a dividend to owners." *Id.* at 89. See also *In re Cult Awareness Network, Inc.,* 151 F.3d 605, 607 (7th Cir.1998) ("If the [equity interest holder] can show a reasonable possibility of a surplus after satisfying all debts, then the [equity interest holder] has shown a pecuniary interest and has standing to object to a bankruptcy [sale] order.").

Here, the Objecting Bondholders failed to show any possibility of any of the sales proceeds would go to their benefit. In this case there are numerous parties which have a higher priority than the Indenture Trustee, who represents the interests of Bondholders. In the Sale Order, the Court found the debt owed to Ableco was in the neighborhood of $6.3 million. Addi-

tionally, the amount of debt owed to the Preferred Trade Vendors was estimated to be approximately $7.5 million. Further, there are tax claims from taxing authorities which would have priority over the movants. Although the total tax debt is unliquidated, it has been represented to the Court this debt ranges anywhere from $1.7 million to $4 million. Finally, there are numerous administrative claims greatly exceeding $1 million which may have priority over the Objecting Bondholders as well. The result of all these claims with priority over the Objecting Bondholders is that there is virtually no possibility of a surplus from the proceeds which would go to the Objecting Bondholders. As such, they have failed to establish they hold any pecuniary interest in the outcome of this sale. Without a pecuniary interest, the Objecting Bondholders lack standing to prosecute an appeal, and thus stand very little chance of success on an appeal.

Turning to the second factor, irreparable injury if the stay is not granted, the movants have a valid argument here. GSRG tried to argue it would be injured by the loss of the costs already incurred in pursuing the sale. However, as counsel for the trustee correctly pointed out, these costs have already been lost—no matter if a stay is or is not granted pending appeal. Movants have deposited a $1 million dollar deposit with the trustee, however, this deposit will be returned to GSRG by the trustee, pursuant to the sale bidding procedure.

While the movants would not suffer any financial injury, with their deposit being returned by the trustee, the effect of § 363(m) could in essence moot the appeal unless a stay is granted. Section 363(m) provides "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validi-

ty of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal." In the Sale Order, this Court has already made a finding that Gadsden Industrial park is a good faith purchaser. As such, unless a stay is granted pending appeal, a reversal or modification by the district court would not affect the validity of the sale. *Miami Center Ltd. Partnership v. Bank of New York,* 838 F.2d 1547 (11th Cir.1988) ("Unless an order approving a sale of property or issuance of a certificate of indebtedness is stayed pending appeal, the sale to a good faith purchaser or the issuance of a certificate to a good faith holder shall not be affected by the reversal or modification of such order on appeal whether or not the purchaser or holder knows of the pendency of the appeal.").

The third element to be considered is the harm or prejudice to the other parties. While GSRG presented evidence there would likely be little more depreciation of the assets during an appeal, Ableco presented evidence that it was incurring $100,000 to $105,000 per month in expenses in maintaining the assets. These expenses would cease to be incurred by Ableco once the sale is closed. Ableco would also be deprived its portion of the sales proceeds pending the resolution of the appeal. Testimony was presented that the amount owed to Ableco was approximately $6.3 million and was accruing interest at 13.5% to 14%. Gadsden Industrial Park contended the funds allocated to this purchase are being kept apart and that is would be deprived of these funds pending any appeal. All of these numbers weigh against the granting of a stay pending appeal.

The last factor for this Court to consider is whether the granting of the stay would serve the public interest. While the public interest would be served by having the parties determine their rights with respect to this appeal, the public interest would also be harmed by the delay in closing this sale. This sale is an important step in the road to closing this bankruptcy case. This bankruptcy case has been pending since 1999 and in Chapter 7 since November of 2000. There certainly is a public interest in having this matter resolved.

Based upon these factors, this Court must conclude that the movants have failed to establish that they should be granted a stay pending appeal.

Therefore it is **HEREBY ORDERED, ADJUDGED AND DECREED** that the motions for stay on appeal (Doc. Nos. 1462 and 1465) are **DENIED**. It is further **ORDERED, ADJUDGED AND DECREED** the Motion to Limit Notice (Doc. No. 1459) is **DENIED**.